Decided at PENDLETON, August 13, 1898.

## STATE v. WELCH.

[54 Pac. 213]

| | |
|---|---|
| 33 | 33 |
| 37 | 88 |
| 33 | 33 |
| f39 | 211 |
| 33 | 33 |
| 41 | 442 |

1. CRIMINAL LAW—HARMLESS ERROR.—Evidence that there was a "scheme" between defendant charged with larceny of sheep and other persons to get away with certain sheep of the prosecuting witness is not prejudicial to defendant on the ground that the word "scheme" suggested dishonesty and fraud where the witness testifies further that defendant wished to steal the sheep of the prosecuting witness and invited witness and another person to join in the theft.

2. IDEM.—Where witness testified that he thought he recognized a person whom he had seen taking away stolen property, error in permitting him to name such person was cured by his subsequent positive statement that he recognized defendant as the person.

3. BIAS OF WITNESS—LIMIT OF CROSS-EXAMINATION.—While it is always competent to show the feeling entertained by a witness toward a person about whom he is testifying (*State* v. *Ellsworth*, 30 Or. 145, cited), such inquiry must be limited to the feeling for or against that person.

4. ERROR CURED BY SUBSEQUENT EVIDENCE.—Error, if any, in refusing to permit a witness to be examined concerning his hostility towards accused's relatives was cured where his subsequent cross-examination disclosed his condition of mind towards such persons.

5. IDEM.—Where it is intended to impeach witness by showing contradictory statements the error of omitting from the impeaching question the date of the statements is cured by the answer of the witness showing that he understands the question : *Sheppard* v. *Yocum*, 10 Or. 403, and *State* v. *Ellsworth*, 30 Or. 145, cited and applied.

6. IMPEACHMENT—PLACE WHERE CONVERSATION OCCURRED.—The attention of a witness need not be called to any particular place in a small hamlet in an interrogatory made as a foundation for impeaching him by evidence of contradictory statements, especially where the witness admits meeting in such hamlet the person to whom the contradictory statements are alleged to have been made : *State* v. *McDonald*, 8 Or. 113, distinguished.

From Grant : Morton D. Clifford, Judge.

Otis Welch appeals from a judgment imposing a fine of $600 for sheep-stealing.

Affirmed.

For appellant there was a brief over the names of *James A. Fee* and *Thornton Williams,* with an oral argument by *Mr. Fee.*

For the state there was an oral argument by *Mr. Chas. W. Parrish,* district attorney.

Mr. Justice Moore delivered the opinion.

Otis Welch was indicted with one Lon Leathers for the larceny of ninety-seven sheep, the property of Emil Scharff, valued at $145.50, and, being separately tried, was convicted. He appeals, assigning as error the action of the trial court in admitting and rejecting certain testimony, and refusing to instruct the jury to return a verdict of not guilty.

1. At the trial one Fred. Deford,— a witness for the state,— on his direct examination, was directed to state what he knew about any scheme between this defendant and others to get away with certain sheep of Emil Scharff's, which he had contracted for from Henry Welch and Mrs. Welch, and which he was to receive on or about May 28, 1896, if there was any such scheme, to which he responded, after an objection thereto being overruled : " Yes, sir, there was such a scheme. There was a scheme between the defendant and other parties." It is contended by defendant's counsel that the word " scheme," as so used, suggested dishonesty and fraud, and tended to create in the jurors' minds an unfavorable opinion of

their client, which was difficult to eradicate.  The word complained of was probably intended to be used in the sense of plan, design or arrangement, and not as a suggestion of an unlawful enterprise ; but, however that may be, we cannot think defendant was prejudiced thereby, in view of the fact that the witness further testified, in substance, that Leathers and Welch wanted to steal Scharff's sheep, and made such a proposal to the witness and another person whom they invited to join in the theft.

2. Homer Hunsaker, having been called on behalf of the state, testified, in substance, that on May 28, 1896, between 4 and 5 o'clock in the evening, as he was returning from the town of Monument, he saw, a little over a quarter of a mile away, some person with a small band of sheep, which he drove about one hundred yards or more over a ridge, out of sight, into a gulch, and then rode away.  Referring to the person whom he had seen at that distance, the witness was asked: "Did you recognize him?" to which he replied : "Well, I think I did, yes, sir." Q. "Well, who did you recognize him to be?" Defendant's counsel objected to the question, unless the witness could answer it of his own knowledge ; but, the objection being overruled, the witness said : "I recognized him to be Otis Welch." This witness further said that he went to the place where the sheep had been left, and found about one hundred head of wethers, a number of them being branded with a circle X, and others with an H ; corresponding, as the evidence shows, with the character, number and marks on the sheep which it is claimed were stolen from Scharff.

The court, on the cross-examination of Hunsaker, sustained an objection interposed by the state, and refused to permit the witness to answer the following question :

"Now, Mr. Hunsaker, you had some little trouble with
the Welchs before ; with Henry Welch or Mrs. Welch ;
some little hard feeling,— didn't you?" The court, how-
ever, on further cross-examination of this witness, per-
mitted him to testify that Mrs. Emma Welch (the person
named in the preceding question) entered into a contract
with him by the terms of which she agreed to pay him
$225 for his interest in a tract of public land upon which
he lived, and that she refused to keep or perform her
agreement. Referring to a subsequent interview with
Mrs. Welch, he added : "Yes, sir ; there was consider-
able of a conversation. She was giving me her opinion
of me, and I spoke about the way her boys done, or had
been doing ; and she was telling me about what they
told her about me, so I just asked her if they told her
anything about what they had been doing. Q. It was
kind of a mutual admiration society? A. We had had a
little difficulty, and they had run to her and told her a lot
of stuff that I had done, and I just asked her if they had
told her about what they had done ; and I then went on
to relate two or three little things, and asked her if they
had told her about that." It is contended by defend-
ant's counsel that Hunsaker's answer, to the effect that
he thought he recognized the person whom he saw at the
distance indicated, conclusively shows that he was not
positive about the matter, and, such being the case, his
testimony was insufficient as proof of defendant's iden-
tity. It will be remembered that Hunsaker, in referring
to the person whom he saw, said : "I recognized him to
be Otis Welch"; so that, if any objection could be urged
to the first answer given upon the question of identity, it
was cured by the subsequent positive declaration of the
witness. If Hunsaker had been unable to form more
than an opinion as to the identity of the person in ques-
tion, it would have been admissible in view of other tes-

timony received; for he stated that the person so seen by him rode off and met two men, whom he took to be Emmet Cohorn and George Stubblefield, the former of whom, appearing as, a witness for the state, testified that on May 28, 1896, he and Stubblefield were hunting for stray horses near Hunsaker's place, and saw defendant, who, as a witness, admits that he met them there, and went with them to look for some horses which he had also lost.

3. It is insisted that, inasmuch as the evidence shows that defendant was a minor living with his mother, the court erred in refusing to permit Hunsaker to answer the question whether he had any trouble with defendant's brother Henry or with his mother. In order that the testimony of a witness may receive the consideration to which it is entitled, it is essential that the judge or jury called upon to determine its proper weight should, as far as possible, ascertain the condition of the witness' mind, with a view of testing his credibility. Such inquiry necessarily involves a consideration of the relation he sustains towards, or the feelings of friendship he entertains for, the party in whose favor, or the enmity and wrath he nurses towards the party against whom, he testifies. All matters which tend in any manner to show the condition of his mind towards the party who may be benefited or injured by his testimony are proper subjects of investigation, and may be proved by competent evidence, either by the cross-examination of the witness himself, or by other witnesses who may be called to testify concerning such facts: Whart. Cr. Ev. § 477; 29 Am. & Eng. Enc. Law (1st ed.), 770; *State* v. *Bacon*, 13 Or. 143 (57 Am. Rep. 8, 9 Pac. 393). The extent of the inquiry is largely a matter resting within the sound discretion of the trial court, which, when exercised, will not be disturbed on appeal, except for an abuse thereof: *Da-*

*vis* v. *State*, 51 Neb. 301 (70 N. W. 984); *Vermont Machine Co.* v. *Batchelder*, 68 Vt. 430 (35 Atl. 378). But, when a court denies àll inquiry into the condition of a witness' mind towards the party against whom he testifies, it is prejudicial error : *State* v. *Ellsworth*, 30 Or. 145 (47 Pac. 199). The law of the civilized world has become such a potent factor for the public good that it affords ample security to every member of society, and hence the necessity for protection from families or clans no longer exists, in view of which the right to scrutinize the mental condition of a witness applies only to the party to a suit or action who may be injured by his testimony : 1 Greenl. Ev. § 450 ; *State* v. *Dee*, 14 Minn. 35 ; *Scott* v. *State*, 64 Ind. 400 ; *State* v. *McCann*, 16 Wash. 249 (47 Pac. 443). Because Hunsaker might have entertained an unfriendly feeling towards Mrs. Welch and her son Henry, it does not necessarily follow that he was hostile to defendant, or that his prejudice could be augmented because he was a minor, or lived with his mother ; but if such were the fact, however, it was incumbent upon his counsel to have limited the inquiry to defendant.

4. But if it were admitted, for the sake of this argument, that the court erred in refusing to permit Hunsaker to answer the question at the time it was asked, his subsequent cross-examination disclosed the condition of his mind towards Mrs. Welch and her sons, thereby correcting any error that might have been committed.

5. M. M. Brierly, a witness for defendant, testified, in substance, that on July 2, 1896, at Monument, in Grant County, he met Fred. Deford, who told him that, in order to save himself, he would have to testify against Otis Welch, and that, if he could get $250, he would go away, and not appear as a witness against him. The

witness, on cross-examination, was asked and answered
the following questions : "Is it not a fact, Mr. Brierly,
that about that time — that day or the next —you saw
Mr. Henry Welch also at Monument, and that you also
saw Mr. Gus. Allen, another relative of this defendant,
there? A. Yes, sir ; I saw them both the next day. Q.
And is it not a fact that you told Mr. Gus. Allen that
you would send Mr. Deford to him? A. To Gus. Allen?
Q. Yes, sir. A. No, sir ; I never told him anything of
the kind. Q. That he would come to him? A. No, sir ;
no such talk. I told Henry Welch on the third day —
I told Henry Welch — He came to Monument the third
day, and I told him this fellow's proposition ; told him
what Deford said." Gus. Allen being called as a witness
for the state, in rebuttal, the following questions were
asked him on direct examination : "I will ask you
whether or not M. M. Brierly on the second or third of July,
1897, at Monument, had any conversation with you. A.
Yes, sir. Q. In relation to Mr. Fred. Deford? A. Yes,
sir." This question and answer were objected to on the
ground that no proper foundation therefor had been laid,
but the objection was overruled, and an exception al-
lowed. "Q. Did or did not Mr. Brierly, in that con-
nection, tell you that Mr. Deford would come to you to
talk in relation to his going away, and not appearing as
a witness in this case?" Same objection, ruling and
exception as last above. "A. Why, he said — Yes ;
he said that he would come to have a talk." It is in-
sisted by defendant's counsel that Brierly's attention was
not attracted to the circumstances of time, place and
persons present, so as to afford him an opportunity of re-
freshing his memory in relation to the conversation im-
puted to him by Allen, whose testimony contradicted
that of an important witness for the defendant, and
tended strongly to prejudice him in securing a fair and

impartial trial. Before a witness can be impeached by evidence that he has made at other times statements inconsistent with his present testimony, such statements must be related to him, with the circumstances of times, places and persons present; and he shall be asked whether he made such statements, and, if so, allowed to explain them : Hill's Ann. Laws, § 841. Does the preliminary question propounded to Brierly comply with the several requirements of this statute? is the question presented for consideration. It will be observed that the interrogatory does not fix any day, month or year upon which it is claimed that Brierly's alleged statement was made to Allen, except by referring to the date previously given by the witness, who, in answer to a question, admitted that he saw Allen on the next day after the one to which his attention was called, or the next day after he met and had the conversation with Deford, which he states in his direct examination occurred July second ; so that, if any error existed in failing to comply with the statute in this respect, it was cured by Brierly's admissions : *Sheppard* v. *Yocum*, 10 Or. 403 ; *State* v. *Ellsworth*, 30 Or. 145 (47 Pac. 199).

6. In *State* v. *McDonald*, 8 Or. 113, the preliminary questions asked for the purpose of laying a foundation to impeach the prosecuting witness were as follows : "Between the time you lost your money and the time you went to Forest Grove, were you not on the streets of the City of Portland, with L. Besser, chief of police, looking for the men that got your money? And did you not see McDonald, one of the defendants, on the street? And did not L. Besser point McDonald out to you, and ask you if he was the man that got your money? And did you not then and there say to L. Besser : 'No ; he is not the man. He don't look like the man. The man

that got my money was of a sandy complexion,'— or words to that effect?" The witness thereupon replied : " No ; I never told Besser so. I did not tell Besser that McDonald was not the man that got my money." It was sought, by the testimony of Besser, to show that the witness had made the statement imputed to him ; but the court refused to admit such testimony, and upon appeal its action was affirmed. Mr. Justice PRIM, speaking for the court, says : " The question propounded to the witness was indefinite as to the circumstances of time, place and persons present, and was properly overruled by the court." The only objection, as we view it, that could well have been urged to the primary question in that case, so far as it related to the place, was that it did not designate any particular part of the city to which the attention of the witness could have been attracted. In cities of the size and importance of Portland, one person might meet another in many places ; and hence a mere reference to the city might not be sufficient to recall the circumstances which ordinarily ought to impress the witness, and thereby revive in his memory the interview to which his attention should be directed, in view of which greater particularity is demanded in describing the place of meeting in cities, villages and towns of importance. But this reason can have no application to hamlets, where the possibility of one person meeting another is necessarily confined to but few places ; and, the reason for the rule failing, the rule might, without any violation of legal principle, be modified accordingly.

It must be admitted that Monument, in Grant County, is the place to which Brierly's attention was called ; but the place is not, in our judgment, of such significance as to render a failure to call the attention of the witness to some particular part thereof such an error as to work a

reversal of the judgment, and particularly so when it is remembered that Brierly admits he met Allen at that place. In *Sheppard* v. *Yocum,* 10 Or. 403, it was held that section 841 of Hill's Ann. Laws is but declaratory of the common-law rule in relation to the impeachment of a witness by proof that he has made at other times statements which contradict testimony given by him at a trial, and that, when the circumstances of time and place have been detailed with particularity, the person to whom the imputed statement was made is the person present, within the meaning of the statute. It will be remembered that the question propounded to Brierly fixed the time of the supposed meeting with Allen in 1896, while the same question, as propounded to Allen, states the year to be 1897 ; but, as nothing is said by defendant's counsel upon the subject, it is altogether probable that the discrepancy arises from a typographical error in preparing the transcript.

We have carefully examined the testimony introduced at the trial, and, without quoting further therefrom, it was sufficient, in our judgment, if the testimony of Deford and Hunsaker can be believed, to warrant the verdict found ; and, this being so, the court committed no error in refusing to instruct the jury to return a verdict of not guilty. It follows that the judgment is affirmed.

AFFIRMED.