Decided 3 November, 1902.

## STATE *v.* DEAL.

[70 Pac. 532.]

IMPEACHMENT BASED ON IRRELEVANT MATTERS.

1. Generally speaking, a party who has brought out irrelevant or immaterial testimony is bound thereby and will not be permitted to afterward contradict the witness on that subject, but there is no such restriction on the right of impeachment when the testimony is relevant, for example, where, in a prosecution for larceny of a horse, an issue is raised as to whether defendant purchased the animal from the complaining witness, questions asked the complaining witness on cross-examination as to his having stated to persons named that he sold the animal to defendant are relevant, and defendant is not bound by his answers, but may contradict him in the proper way.

FOUNDATION FOR IMPEACHMENT OF WITNESS.

2. Under Hill's Ann. Laws, § 841, providing that, before a witness can be impeached by evidence of inconsistent statements, such statements must be related to him, and he be permitted to explain them, a foundation for impeachment was laid where complaining witness, after testifying that he had traded three horses to defendant, but not the one in question, was asked if he had not, at a designated time and place, stated to a person named that he had traded the horse in question to defendant, to which he answered "No."

IDEM.

3. A foundation for impeachment was also laid when the complaining witness was asked if, at a designated time and place, he had not stated to a person named that he had traded four horses to defendant, to which he answered "No."

From Union: ROBERT EAKIN, Judge.

The defendant R. W. Deal was tried, convicted, and sentenced by judgment of the trial court for the crime of larceny by stealing a gelding, the property of one Charles Rowland. There was evidence introduced at the trial tending to show that the horse was brown in color, branded J D on the the the left shoulder, about four years old, having white hind feet, and a cut or bruised knee. Charles Rowland, a witness for the state, testified in effect, that he was the owner of the animal; that he traded for it, when a yearling, with Eddie Masterson; that he never sold or disposed of it, and that the last time he saw it was in the spring, when it was in W. B. Campbell's pasture. As a defense, Deal claimed to have traded for the horse with Rowland about April, 1901, and that in the trade he obtained two J D horses, one being the gelding in question; also a sorrel saddle horse and a diamond dot mare,—four in all. On cross-examination, Rowland admitted that he had made a trade with Deal, but claimed that he let him have three horses only,—the sorrel saddle horse, the diamond dot mare, and a yearling colt, but neither of the J D horses, and hence not the gelding in question. Having stated that he was acquainted with William Brewer, he was further interrogated and answered as follows: "Q. Do you remember of meeting Mr. Brewer on the Foothill road along near the Shambaugh place some time last May? A. Last fall. Q. About last April? A. No, sir. Q. Don't remember meeting him there? A. No, sir. Q. Didn't you meet him at that time and place, you and he being there alone, about the last of April, and in a conversation with him tell him that you had traded your two J D horses to the defendant, Mr. Deal, here, or words to that effect? A. No, sir. I remember about riding along with him. But it seems like it was last fall. I was going over to

Price Gates' with him. Q. You was with him there, about the Shambaugh place, at one time? A. Yes, but there was another fellow along. Q. Who was the other fellow? A. Hornbeck. Q. Was Hornbeck present when you had any talk with him? A. He was riding along with him. Q. Isn't it a fact, in that conversation, that you and Brewer being there alone together, that you said to him, he wanting to trade, you having talked about trading horses, and you stated to him at that time that you had traded two J D horses to Mr. Deal, and two other horses? A. No, sir. Q. Do you swear to that positively? A. Yes." And, having testified that he was acquainted with Cleve Hopper, he was asked: "Q. Do you remember seeing him, going down with him from the new town to the old town, in La Grande, along about April last? A. Yes, I have done that a good many times. Q. Do you remember of going with him at that time from the new town to the old town, and in conversation with him, you and he being alone, you stated to him that you had traded four horses to Mr. Deal? A. No, sir; I never talked trading horses in my life with him."

For the purpose of contradicting Rowland, and showing that he had at other times made statements inconsistent with this testimony, Brewer was called, and testified that in the latter part of April, 1901, he was in company with him on the Foothill road, near the Shambaugh place, and had a conversation with him concerning the horses he then had and presently owned, whereupon witness was asked to state whether or not in that conversation Rowland said that he had traded two J D horses to defendant, or words to that effect. To this an objection was interposed and sustained, on the ground that the question was incompetent, because no proper foundation had been laid for impeachment. Following this an offer was made to show by the witness that Rowland stated, in the conversation referred to, that he had traded his two J D horses to R. W. Deal, the defendant, and that one of them had a lame or blemished knee, and this was refused. Later Brewer was again called, and asked whether or not, in the conversa-

tion with Rowland on the Foothill road, near the Shambaugh place, the latter part of April, referred to, he and Rowland, being alone, Rowland did not state to him that he had traded two J D horses to Mr. Deal, and two other horses, or words to that effect; and, not being permitted to answer, the offer was made to prove the fact indicated by the question, but without avail. Cleve Hopper was then called, and testified that he remembered seeing Rowland about the latter part of April, 1901, and going with him from the new town to the old town of La Grande, whereupon the further offer was made to prove by him that in a conversation then had with Rowland, they being alone, Rowland said that he had traded two head of horses branded J D, one of them being the horse involved in this case; but was not permitted to do so over the objection that no proper foundation had been laid for impeachment.

REVERSED.

For appellant there was a brief over the names of *Thos. H. Crawford*, and *Ivanhoe & Cherry*, with an oral argument by *Mr. Crawford*.

For the state there was a brief over the name of *D. R. N. Blackburn*, Attorney-General, with an oral argument by *Mr. Blackburn* and *Mr. Samuel White*. District Attorney.

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

The foregoing statement presents the only alleged errors relied upon for reversal. They involve but a single question, namely, was there a proper foundation laid for the impeachment of the prosecuting witness, Rowland? If there was, as respects either of the witnesses Brewer or Hopper, there was error for which a new trial should be awarded, and of this we will now inquire. Preliminarily, it is insisted that the subject-matter of inquiry is wholly irrelevant and immaterial to any issue in the case, and could not, therefore, form a basis for impeachment.

1. It is legally true that, when a matter immaterial and wholly irrelevant to the issue shall have been elicited from a witness, it concludes the party examining him; and he will not thereafter be permitted to impeach him by evidence showing that he has at other times made statements at variance or in disparagement of the testimony then adduced. This, however, does not extend to incompetent testimony merely because it is so, unless it may be said at the same time to be immaterial and irrelevant: *Josephi* v. *Furnish,* 27 Or. 260 (41 Pac. 424). But the testimony elicited from Rowland was not only competent, but perfectly relevant, and altogether material. There was an issue raised as to whether the defendant had not traded for or purchased the animal in question from Rowland, who was the owner at the time of the alleged theft. Rowland's attention was then called to the matter, and he testified positively that he did not trade either of the J D horses, or the animal in question, to the defendant. Now, it was with relation to this testimony that the attempted impeachment was pursued, and the effort was to show that the witness had at other times made statements inconsistent therewith. The testimony was, therefore, not foreign to any issue in the case, but altogether competent, pertinent, and relevant.

2. It is a statutory rule that a witness may be impeached by evidence that he made at other times statements inconsistent with his present testimony; but, before this can be done, the statements must be related to him, with the circumstances of time, place, and persons present, and he shall be asked whether he has made such statements or not, and, if so, allowed to explain them: Hill's Ann. Laws, § 841. This is but declaratory of the common-law rule, and the purpose of requiring the observance of the formality prescribed is for the protection of the witness, to give him an opportunity of recalling the facts and correcting the statements when immediately brought to his attention. When, however, the statements are called to his mind, together with such circumstances of time, place, and persons present as to enable him to readily understand the particular statements alluded to by the questioner, and he then

denies making any, or attempts to qualify them, other persons having knowledge of the fact may be called to contradict him: *Sheppard* v. *Yocum,* 10 Or. 402; *State* v. *Welch,* 33 Or. 33 (54 Pac. 213) ; *State* v. *Bartmess,* 33 Or. 110 (54 Pac. 167). Now, as it pertains to the statement or admission made to Brewer, Rowland denied it *in toto.* He recalls, however, that he was with Brewer at the place designated, but is not certain as to the time, thought it was in the fall; and that another person, one Hornbeck, was also present. So that he does not agree in his recollection entirely as to the circumstances indicated by the interrogator. But this is because he remembers them differently, or does not care, for some reason, to state them truly. This circumstance does not, in any sense, stand in the way of laying a proper foundation for impeachment, the essential conditions being that the witness' attention be so definitely attracted, in the manner designated, to the exact conversation or statement supposed to have been had or made that is in the mind of the questioner, so as to give him an opportunity to affirm or deny, or to explain by relating it as his memory bears him out. We think the foundation was well laid, for the impeachment by the testimony of the witness Brewer, whose attention was directed to the cirucmstances of time, place, and persons present in like manner as Rowland's attention was called thereto, and he was asked whether or not Rowland had stated to him, in the supposed conversation, that he had traded his two J D horses to defendant, Deal, or words to that effect, and he was not allowed to answer. This was followed by an offer to prove the statement in a little different form, which, if objectionable, was afterwards cured by an offer to show by the witness that the statement was made to him by Rowland in the identical language employed in the interrogation addressed to the latter.

3. The attempted impeachment by Cleve Hopper has, perhaps, not so good a basis. He was asked, touching the supposed conversation, whether Rowland stated that he had traded four horses to Mr. Deal, instead of three. If permitted to answer, however, it would have had some tendency to im-

peach Rowland touching the matter in issue, and should have been allowed to go to the jury. We do not desire to be understood as holding that the matters offered to be proved by witnesses Brewer and Hopper were, in any sense, substantive evidence, admissible for the purpose of showing title in the defendant, but have considered only the question as to whether the proper foundation had been laid for the impeachment of the witness Rowland. It was very important to the defendant that he should have been allowed to discredit the only witness who was in a position to dispute his contention that he had traded for the horse, and was, therefore, the owner at the time of the alleged larcenous taking; and he was entitled to have the testimony go to the jury for their consideration in arriving at a verdict. The judgment must, therefore, be reversed, and remanded for a new trial.                                    REVERSED.

*Decided 16 June, 1902; rehearing denied.*