Argued January 12, affirmed February 2, rehearing denied April 20, 1926, petition for order sending case to Circuit Court for further action denied.

# STATE *v.* FREDERICK L. MILLER.

## (243 Pac. 72.)

**Indictment and Information—Indictment for Manslaughter, in Language of Statute, Limiting Speed of Automobile, Held Sufficient.**

1. In prosecution of automobile driver for involuntary manslaughter, indictment, which charged decedent was killed by defendant while driving at unlawful speed, in language which followed language of Laws 1921, page 712, Section 2, subdivision 16, *held* sufficient.

**Indictment and Information—Minor Objections to Indictment for Involuntary Manslaughter are Waived by Failure to Demur.**

2. All objections to indictment of automobile driver for involuntary manslaughter, except those pertaining to jurisdiction of court, and that facts were not alleged sufficient to constitute crime, are deemed waived, where defendant filed no demurrer, as authorized by Section 1491, Or. L., on ground that it did not substantially conform to requirements of Section 1440.

**Homicide—Allegations Required in Indictment as to Acts of One Accused of Involuntary Manslaughter.**

3. Indictment for manslaughter, as offense is described in Section 1898, Or. L., should, if offense is predicated on doing of lawful act "without due caution or circumspection," allege specifically facts constituting such negligence; but, if committed while perpetrating "unlawful act," it is sufficient to allege such act with sufficient particularity to identify it.

**Automobiles—Evidence as to Sounding Horn Held Admissible, in Prosecution for Manslaughter.**

4. In prosecution of automobile driver for involuntary manslaughter, where decedent's companion was asked if she heard sound of siren, whistle, or horn, her reply that there was none was admissible to establish charge of careless, imprudent, and unlawful driving.

**Automobiles—Question of Warning Held for Jury, in Prosecution for Manslaughter.**

5. In prosecution of automobile driver for involuntary manslaughter, question of whether he gave warning of his approach to scene of accident was for jury.

1. Homicide by negligent operation of automobile, see notes in 30 L. R. A. (N. S.) 458; 33 L. R. A. (N. S.) 403.
4. See 10 R. C. L. 928.

Automobiles — Testimony as to Skid Marks Held Admissible, in Prosecution for Manslaughter.

6. In prosecution of automobile driver for involuntary manslaughter where it appeared there were skid marks from place of accident to place where automobile stopped which were discernible on pavement for ten days afterward, testimony of witness, who visited scene on morning following accident, relative to such skid marks and maps showing the same, held admissible.

Automobiles—Care Required of Driver Held Commensurate With Danger.

7. In prosecution of automobile driver for involuntary manslaughter, instruction that defendant had right to drive thirty miles an hour at time of accident, and that speed at other times was immaterial, was properly refused, since degree of care required is commensurate with danger involved whatever the speed.

Automobiles—Question of Care Used by Driver Held for Jury, in Prosecution for Manslaughter.

8. In prosecution of automobile driver for involuntary manslaughter, whether defendant exercised degree of care which would have been exercised by ordinarily prudent person under similar circumstances was question for jury.

Automobiles—Modification of Instruction on Decedent's Negligence, in Prosecution for Manslaughter, Held Proper.

9. In prosecution of automobile driver for involuntary manslaughter, where instruction that defendant was not guilty if sole cause of death was decedent's negligence was modified so as to instruct that contributory negligence of decedent would be no defense, *held*, such modification was not error, since instruction requested, though sound, was apt to be misleading.

Witnesses—Foundation for Impeachment by Inconsistent Statements Held Insufficient.

10. Where, in prosecution of automobile driver for involuntary manslaughter, counsel, in laying foundation for impeaching witness by inconsistent statements, had asked her about conversation she had with man whom she was well acquainted with, saying it occurred a day or so after accident on "street or somewhere," *held* place of conversation was not sufficiently definite to comply with Section 864, Or. L., relative to impeachment under such circumstances.

---

Criminal Law, 16 **C. J.,** p. 745, n. 21, p. 1067, n. 97.

Homicide, 29 **C. J.,** p. 1152, n. 76; 30 **C. J.,** p. 99, n. 47, p. 117, n. 62, p. 206, n. 11, p. 216, n. 11 New, 13½, p. 326, n. 84, p. 336, n. 79, p. 337, n. 81.

Indictments and Informations, 31 **C. J.,** p. 717, n. 27, p. 819, n. 10, p. 874, n. 87.

Witnesses, 40 Cyc., p. 2728, n. 57, p. 2729, n. 62, p. 2730, n. 64.

7. See 2 **R. C. L.** 1183.
10. See 28 **R. C. L.** 628.

From Multnomah: GILBERT W. PHELPS, Judge.

Department 2.

This is an appeal from a judgment of conviction of involuntary manslaughter. Evidence introduced by the state tended to show that the defendant, on January 23, 1924, in company with Mrs. Reva Holland, was driving his Pierce-Arrow along Sandy Boulevard in a westerly direction toward the city of Portland, at a rate of speed between 45 and 50 miles per hour. It was a clear day, being about 4:30 in the afternoon, and the pavement was dry. Mrs. Sue Bunn and her mother, Mrs. Alma Hall, the decedent, had been driving ahead of the defendant, but finally parked their Ford facing it west and parallel with and on the extreme outer edge of the pavement in front of the residence where decedent had been staying. After Mrs. Hall got out of the automobile, she walked around the right side and front end thereof and started diagonally across the pavement in a southwesterly direction toward a mail-box on the opposite side of the road. While she was about in the middle of the highway, she was struck by defendant's automobile, which at that time was being driven at a high and dangerous rate of speed, and was thrown approximately 30 feet, whereby injuries were sustained, from which she died almost immediately. The automobile crashed through a fence, and broke off a telephone pole flush with the ground. From where the car stopped there was a continuous line of skid marks on the pavement for about 230 feet. Defendant claims that he was traveling from 25 to 30 miles per hour; that he sounded his horn when about 60 feet from Mrs. Hall; and that she apparently became confused and so changed her course that he was unable to

avoid striking her, although he did his best to do so.

The indictment charges:

"The said Frederick L. Miller on the 23rd day of January, A. D. 1924, in the County of Multnomah and State of Oregon, then and there being, and then and there not being within the limits of any incorporated city or town, was then and there engaged in the commission of the following unlawful act, to-wit: Driving a motor vehicle in a careless and imprudent manner, and at a dangerous rate of speed, committed as follows, to-wit: He, the said Frederick L. Miller, was then and there operating and driving a certain motor vehicle, to-wit, an automobile, on a certain public highway of the State of Oregon, to-wit, road No. 917 of the County of Multnomah, State of Oregon, which said public highway was then and there commonly known as Sandy Road, and was then and there situated within the County of Multnomah, State of Oregon, and was then and there a public thoroughfare then and there used and intended for the use of the general public for vehicles; and the said automobile was then and there under the direction of the said Frederick L. Miller and in the control of the said Frederick L. Miller; and the said Frederick L. Miller was then and there unlawfully and wilfully operating and driving, and did then and there unlawfully and wilfully operate and drive, said automobile on said public highway in a careless and imprudent manner and at a high, unreasonable, imprudent, reckless, and dangerous rate of speed, and at a rate of speed that did then and there endanger the life and limb of a certain person, to-wit, one Alma Hall, who was then and there upon said public highway at said time and place; and the said Frederick L. Miller, while then and there so engaged in the said commission of said unlawful act of driving said motor vehicle in a careless and imprudent manner and at a dangerous rate of speed, did then and there, by his act, unlawfully and feloniously, involuntarily kill the said Alma Hall in the following manner and by the following means, to-wit: He, the said Frederick

L. Miller, while then and there so engaged as aforesaid in then and there unlawfully and wilfully operating and driving said automobile on said public highway in a careless and imprudent manner, and at a high, unreasonable, imprudent, reckless, and dangerous rate of speed, and at a rate of speed that did then and there endanger the life and limb of the said Alma Hall, who was then and there upon said public highway, did then and there force, drive, move, and run said automobile upon, against, and into, and cause said automobile violently to then and there collide with, the person and body of the said Alma Hall upon said public highway, and did thereby then and there unlawfully and feloniously involuntarily inflict, and cause to be inflicted, upon the person and body of the said Alma Hall, certain mortal injuries, fractures, wounds, and contusions whereof the said Alma Hall thereafter, on the said 23rd day of January, A. D. 1924, did die, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Oregon.''

Defendant demurred to this indictment for the reason that it failed to state facts sufficient to constitute a crime, but the same was overruled; and, upon trial, defendant was found guilty as charged. At the close of the State's case in chief, defendant moved for a dismissal of the cause for the reason above stated and also that the allegations of the indictment are conclusions and not averments of fact. Other assignments of error pertain to instructions of the court and the admission and rejection of certain testimony.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Senn & Recken* with an oral argument by *Mr. F. S. Senn.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. Joseph Hammersley,* Deputy District Attorney, with oral ar-

guments by *Mr. Leon W. Behrman,* and *Mr. George Mowry,* Deputies District Attorney.

BELT, J.—1, 2. In considering defendant's challenge as to the sufficiency of the indictment in this action, it is important to bear in mind that the state charges decedent was killed by defendant in the commission of an unlawful act. It is not a case of involuntary manslaughter predicated on the doing of a lawful act "without due caution or circumspection," as provided in Section 1898, Or. L. The allegations of the defendant's alleged unlawful act in driving his automobile at a dangerous and unreasonable rate of speed follows the language of subdivision 16, Section 2, Chapter 371, Laws of Oregon for 1921, which provides as follows:

"Every person operating a motor vehicle on the public highways of this state shall drive the same in a careful and prudent manner, not to exceed thirty miles per hour * * , and in no case at a rate of speed that will endanger the property of another, or the life and limb of any person."

This pleading is sufficient in view of the fact that the defendant is definitely apprised of the nature and cause of the accusation against him: *State* v. *Watson,* 216 Mo. 420 (115 S. W. 1011); *Schultz* v. *State,* 89 Neb. 34 (130 N. W. 972, Ann. Cas. 1912C, 495, 33 L. R. A. (N. S.) 403); *State* v. *Campbell,* 82 Conn. 671 (74 Atl. 927, 135 Am. St. Rep. 293, 18 Ann. Cas. 236); *Madding* v. *State,* 118 Ark. 506 (177 S. W. 410); *State* v. *Welford,* 29 R. I. 450 (72 Atl. 396); *State* v. *Randall,* 107 Wash. 695 (182 Pac. 575). Can it reasonably be contended that the defendant, or any person of common understanding, after reading this indictment would not know the nature and character of the crime charged? Was there any danger under

such allegations that the defendant would be taken by surprise in the course of the trial? We think not. The indictment certainly charges the crime of involuntary manslaughter. As stated in *State* v. *Laundy,* 103 Or. 443 (204 Pac. 958, 206 Pac. 290) :

"The statute describes the acts which constitute the crime. The indictment describes the acts with which the defendant is charged in the same language which is employed in the statute to define the prohibited acts. The indictment contains every element of the complete offense as that offense is defined by the statute. The state is not required to plead the evidence relied upon to prove the acts alleged to have been committed by the defendant. The indictment advises the defendant not only of the nature, but also of the cause, of the accusation made against him. The language employed is such as to enable a person of common understanding to know what is intended."

If defendant desired that the state be required to allege the particular acts constituting the crime, he should have, in accordance with Section 1491, Or. L., demurred to the indictment because it did not substantially conform to the requirements of Chapter VII, Title XVIII, of the Code, which, in reference to the matter under consideration, provides:

"The indictment must be direct and certain, as it regards: (1) The party charged; (2) the crime charged; and (3) the particular circumstances of the crime charged when they are necessary to constitute a complete crime." Section 1440, Or. L.

Otherwise all objections to the indictment are deemed to have been waived, excepting objections pertaining to jurisdiction of the court and that facts are not alleged sufficient to constitute a crime: *State* v. *Goodall,* 82 Or. 329 (160 Pac. 595). However, the indictment is not vulnerable to demurrer on account of uncertainty, as it follows the wording of the statute

and defendant was thereby definitely and certainly informed of the nature and cause of the accusation against him.

3. If the defendant had been indicted for having committed the crime of involuntary manslaughter by the doing of a lawful act "without due caution or circumspection," it would have been necessary under that theory to have alleged specifically the facts constituting such negligence. The rule in alleging negligence in civil actions would then apply. This distinction in pleading is recognized in *People* v. *Ryczek,* 224 Mich. 106 (194 N. W. 609), and in *People* v. *Townsend,* 214 Mich. 267 (183 N. W. 177, 16 A. L. R. 902). In the latter case the court said:

"The distinction between involuntary manslaughter committed while perpetrating an unlawful act not amounting to a felony and the offense arising out of some negligence or fault in doing a lawful act in a grossly negligent manner and from which death results must be kept in mind upon the question of pleading. In the former case it is sufficient to allege the unlawful act with sufficient particularity to identify it and then to charge that as a consequence the defendant caused the death of the deceased, and there is no need to aver in detail the specific acts of the accused; but in case of manslaughter committed through gross or culpable negligence while doing a lawful act the duty which was neglected or improperly performed must be charged as well as the acts of the accused constituting failure to perform or improper performance."

Appellant relies strongly upon *State* v. *Gesas,* 49 Utah, 181 (162 Pac. 366); but an examination of the indictment in that case discloses the crime of involuntary manslaughter was not based upon the commission of an unlawful act. The court very properly held that the facts constituting the alleged negligent operation of the automobile should have been pleaded and

not conclusions upon which no issue could be joined. There are other particulars in which such case can be distinguished from the one at bar, but the point mentioned renders it uncontrolling relative to the sufficiency of the indictment under consideration.

In *State* v. *Lantz,* 90 W. Va. 738 (111 S. E. 766, 26 A. L. R. 894), also cited by appellant, the indictment was not held defective for uncertainty, but the action was dismissed because the crime charged was based upon an unconstitutional statute.

4, 5. Error is predicated upon the ruling of the court permitting witness Mrs. Bunn to answer the question, ''Did you hear the sound of any siren, whistle, or horn?'' She replied, ''There was no siren, whistle, or horn.'' Appellant contends this testimony was irrelevant under the issues and highly prejudicial. This testimony was admissible to establish the charge that defendant was driving in a careless, imprudent, and unlawful manner. Whether defendant actually did give warning of his approach was a question for the jury.

6. It is contended that error was committed in admitting the testimony of A. R. Fairbanks, who went to the scene of the accident the following morning, and said that he traced skid-marks for a distance of approximately 230 feet on the pavement. Witness McEachern was about 150 or 200 feet away at the time decedent was struck, and testified that he traced the skid-marks in question to the automobile in the ditch. He said there were no marks of this kind prior to the accident and that the marks leading to the automobile were discernible on the pavement for a period of ten days or two weeks. There was no substantial change in conditions, and we think this and other evidence of similar import, to which objec-

119 Or.—27

tion was made, is admissible: *People* v. *Ryczek, supra.* It was also proper to admit the map in evidence for reference purposes upon which appeared skid-marks leading to where the automobile stopped.

7–9. Exception was taken to refusal of the court to give the following requested instruction:

"I instruct you, as a matter of law, that this defendant, Frederick L. Miller, has a right to operate his automobile upon the highway at this place at a rate of speed of thirty miles an hour, and this speed applies to the time of the accident. What speed he may have been going when he started down the hill or at some other place is irrelevant and immaterial. Any speed before that cannot be considered by you as proving that he is guilty, except that it may be taken in consideration as a circumstance in determining the speed at which he was going at the time of the accident; but, as stated to you before, was he going over thirty miles an hour at the time of the collision, and was that the proximate cause of the death of Mrs. Hall?"

It was not necessarily a question of whether defendant was driving in excess of thirty miles an hour at the time of the accident. The degree of care which must be used is commensurate with the danger involved. Situations may readily be conceived where it would be negligent to drive at the rate of ten miles per hour, or to move the car at all. It was for the jury to say, under all the facts and circumstances, whether defendant exercised that degree of care and caution which would have been exercised by an ordinarily prudent person under similar circumstances. The instruction given by the court relative to this phase of the case was a clear and accurate statement of the law, and there was no error in refusing to give the instruction requested.

Appellant requested the following instruction:

"I further instruct you that it was the duty of Mrs. Hall before crossing this pavement to look and listen and to see if any cars were approaching. It was her duty to use her senses, her eyes and her ears to avoid being injured. If she could have looked up the road and seen this car coming and by the exercise of ordinary care could have avoided it, and if you find that she did not do this, and that as the result thereof, this collision occurred, and that the negligence of Mrs. Hall was the sole cause of her death, then I instruct you that this defendant would not be guilty of the crime of manslaughter."

But the court gave the same in the following modified form, to which exception was taken:

"I further instruct you that it was the duty of Mrs. Hall before crossing the pavement to look and listen and see if any cars were approaching. It was her duty to use her senses, her eyes and her ears to avoid being injured. If she could have looked up the road and seen this car coming, and by the exercise of her care could have avoided it, and if you find that she did not do this, and that as a result thereof this collision occurred, and that the negligence of Mrs. Hall was the sole cause of her death, and that the defendant was not driving in a careless and imprudent manner and at a dangerous rate of speed, as alleged in the indictment and as defined in these instructions, then I instruct you that this defendant would not be guilty of the crime of involuntary manslaughter. If the defendant was driving in the careless and imprudent manner and at a dangerous rate of speed as alleged in the indictment, then the carelessness of Mrs. Hall would not be a defense to this defendant."

The instruction requested was sound, but was apt to be misleading in view of the fact that contributory negligence in an action of this kind is no defense: *State* v. *Campbell, supra; State* v. *Disalvo* (Del.), 121 Atl. 661; *State* v. *Elliott,* 94 N. J. L. 76 (110 Atl. 135); 13 R. C. L. 859; Berry on Automobiles (4th ed.),

§ 925. It was proper for the court to instruct the jury that defendant could be found guilty if his alleged unlawful manner of driving was the proximate cause of decedent's death, even though her conduct in crossing the road may have contributed to or helped to produce such result. We have carefully considered the entire charge of the court and find that it is in keeping with the law of the case. Appellant has no reason to complain in this respect.

10. Ernest Younger was called as a witness to impeach Mrs. Holland, relative to an alleged statement she made to him concerning the rate of speed the defendant was traveling at the time of the accident, and was not permitted to testify about such matter for the reason the court was of the opinion that a proper foundation for such impeaching question had not been established. We think no error was committed in this respect. The basis for such impeaching question is disclosed by the record in the examination of Mrs. Holland:

"Q. Now, you know Ernest Younger, don't you?

"A. Yes, sir.

"Q. You have known him for several years, haven't you?

"A. A short time, yes.

"Q. Do you remember meeting him a few days after the accident and your having a conversation with him as to the rate of speed that Mr. Miller was traveling at the time of the accident?

"A. When was that?

"Q. A day or so after the accident you met him on the street or somewhere?

"A. I met Mr. Younger, yes.

"Q. Do you remember a conversation you had with him regarding the rate of speed you were going when he asked you how fast you were going at that time?

"A. Yes, and I told him that I was going— * *"

"Q. I will ask you whether you didn't state at that time to Mr. Younger when he asked you how fast you were going at that time,. that you were going twenty-five miles an hour?

"A. I believe not."

Did counsel sufficiently comply with the provisions of Section 864, Or. L., by relating to the witness her alleged statements, together "with the circumstances of times, places and persons present"? We are not unmindful that the object of the statute is for the protection of the witness and to enable her to recall the alleged conversation, and that when it definitely appears that such is identified in the mind of the witness it is immaterial that some of these preliminary recitals, required by statute, are not as definite as they should be. The record does not convince us that Mrs. Holland knew of the precise conversation upon which counsel for appellant sought to impeach her. She was well acquainted with Younger and it is reasonable to assume that she might have had several conversations with him. To ask the witness whether this alleged statement occurred on the "street or somewhere" is not sufficiently definite.

Other assignments of error are deemed of no merit.

The judgment of the lower court is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BROWN and RAND, JJ., concur.