Argued June 25, affirmed July 11, 1928.

STATE *v.* RUTH W. LOCKWOOD.

(268 Pac. 1016.)

For appellant there was a brief over the names of *Mr. James G. Heltzel,* and *Messrs. Collier, Collier & Bernard* with oral arguments by *Mr. Heltzel* and *Mr. E. F. Bernard.*

For respondent there was a brief and oral argument by *Mr. John H. Carson,* District Attorney, and *Mr. Lyle J. Page,* Deputy District Attorney.

BROWN, J.—A brief statement of facts and circumstances surrounding the accidental homicide will be helpful in acquiring a better understanding of the questions at issue herein. On the evening of July 19, 1927, the defendant, a widow about 46 years of age, was called to the Marion Hotel in Salem by a man who desired to negotiate with her relative to the sale of her farm situate some miles distant. She drove to Salem in her automobile, arriving at the hotel about 7:30 P. M. In company with a third person, she met the interested party at room 402, where they dined together and mutually indulged in the drinking of spirituous liquors. Shortly before 9:00 P. M., she left the hotel with the intention of returning to her farm by means of her motor-car, which was parked near by. In leaving Salem, she drove her car to Liberty Street, thence to State Street, and then traveled easterly along that street with increasing speed as she proceeded on her way. Willson Park borders State Street on the north, and extends from Church Street to the capitol. On the evening in question a band concert was in progress in that park; consequently there was much traffic on State Street, and many cars were parked on that

street in the vicinity of the park. About 8:45 P. M. Maynard Sawyer, a young man employed as a clerk in the Capital Drug Store, left his boarding-house in South Salem, on foot, for the purpose of taking a letter to the postoffice, which is situate on the north side of State Street, and between Church and Cottage Streets. When he reached the intersection of State and Church Streets, he undertook to cross State Street on his way north to the postoffice, but as he crossed over the center of State Street, he was struck down and almost instantly killed by the automobile which the defendant was driving on State Street at an unlawful rate of speed. His mangled body was dragged at least 70 feet by the car. Notwithstanding the force and noise of the impact of the speeding car with the body of Sawyer, the defendant failed to check her speed until she was pursued and overtaken by two traffic officers, who claimed that at the time of her arrest defendant was intoxicated, and who, to corroborate their testimony, produced two pint bottles of spirituous liquor which they took from defendant's car at the time of her arrest.

Defendant denies any knowledge of striking down young Sawyer. She denies any knowledge of the two pint bottles of liquor taken from her car by the officers. She denies that she was under the influence of liquor at the time she was arrested, but admits that while at dinner she drank two drinks of moonshine whisky.

Section 1 of Chapter 182, General Laws of Oregon, 1925, denounces as a crime the driving or operating of any automobile upon or over any highway within the state by any person while in an intoxicated condition. Subdivision 16 (b) (5) of Section 1, Chapter 217, General Laws of Oregon, 1927, prohibits the

driving of any vehicle at a speed exceeding 20 miles an hour within the limits of incorporated cities and towns; and subdivision 16 (a) of Section 1, Chapter 217, Laws of 1927, denounces as a crime the driving by any person of any vehicle upon a highway of this state "at such a speed as to endanger the life, limb or property of any person." The broadest provision of this statute reads:

"No person shall drive any vehicle upon the highway * * without due caution and circumspection." Subd. 18 (b), § 1, Chap. 217, Gen. Laws of Or., 1927.

In denouncing as crimes the several acts above noted, the legislative assembly doubtless proceeded upon the theory that such acts were dangerous to human life and constituted actual wrongs.

■ The defendant has pressed upon our attention the asserted failure of the indictment to allege the facts with particularity relating to the operation of defendant's car without due caution or circumspection. The organic law of Oregon declares that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him: Or. Const., Art. I, § XI. The statutory law requires that the indictment be direct and certain as to the party charged, the crime charged, and, when they are necessary to constitute a complete crime, as to the particular circumstances of the crime charged: Or. L., § 1440. Subdivision 6, Section 1448, Oregon Laws, provides that the indictment is sufficient if "the act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended." Finally, an indictment drawn in the language of the statute, which defines the crime,

is sufficient to meet the requirements of the Constitution and the Code: *State* v. *Shaw*, 22 Or. 287, 290 (29 Pac. 1023); *State* v. *Ross*, 55 Or. 450, 479 (104 Pac. 596, 106 Pac. 1022, 42 L. R. A. (N. S.) 601, 613); *State* v. *Scott*, 63 Or. 444 (128 Pac. 441); *State* v. *Wilbur*, 85 Or. 565 (166 Pac. 51).

■ ■ With precision and certainty, the indictment set out above informs the defendant that at a named time and place, while operating her motor-car upon and over a public highway in the city of Salem in violation of specified provisions of law, she involuntarily killed Maynard Sawyer by unlawfully striking him with her automobile. The indictment is certain as to venue; certain as to the identity of the accused; certain as to the identity of the victim of the offense; and certain as to the manner and means of the commission of the alleged homicide. The indictment fully informs the defendant of the nature of the accusation. It enables her to make a defense, and is sufficient to protect her against a second prosecution for the same crime.

In the consideration of this cause, we must keep in mind the theory of the prosecution; i. e., that the defendant involuntarily struck and killed young Sawyer while she was engaged, not in a lawful act, but while in the commission of an unlawful act, which act is clearly specified in the charging part of the indictment. It is therefore unnecessary to set out with greater particularity the facts wherein she failed to use due caution and circumspection. This question was before our court in the case of *State* v. *Miller*, 119 Or. 409 (243 Pac. 72), and in disposing of the case Belt, J., speaking for the court, quoted with approval from the leading case of *People* v. *Town-*

*send,* 214 Mich. 267 (183 N. W. 177, 16 A. L. R. 902), where the Supreme Court of Michigan wrote:

"The distinction between involuntary manslaughter committed while perpetrating an unlawful act not amounting to a felony and the offense arising out of some negligence or fault in doing a lawful act in a grossly negligent manner and from which death results must be kept in mind upon the question of pleading. In the former case it is sufficient to allege the unlawful act with sufficient particularity to identify it and then to charge that as a consequence the defendant caused the death of the deceased, and there is no need to aver in detail the specific acts of the accused; but in case of manslaughter committed through gross or culpable negligence while doing a lawful act the duty which was neglected or improperly performed must be charged as well as the acts of the accused constituting failure to perform or improper performance."

To like effect, see the cases in the foregoing opinion.

The indictment in question complies fully with the requirements of the fundamental and the statutory law of this state. In charging the collateral crime the pleader used the statutory language; and the law does not require more: Wharton on Homicide, § 576.

■ The defendant objects to certain instructions given by the trial court to the jury. This objection is without merit. There is no force in the position that the jury was not properly instructed. The court gave no instructions that go beyond the limitations of law applicable to the case. The indictment having been drawn in full accord with the inhibitions and commands of criminal procedure, it follows as a natural sequence that the charge given by the learned trial judge to the jury, in harmony with the theory of the state as alleged in the indictment, and as sup-

ported by the evidence adduced upon the trial, constitutes a correct pronouncement of law.

■ It is contended that the court erred in permitting one of the arresting officers to testify that he found two flasks of whisky in defendant's automobile at the time of her arrest, and further in receiving in evidence the bottles of liquor. The unlawful possession of intoxicating liquor within this state is a statutory offense; and, as heretofore held by this court in *State* v. *Haynes,* 116 Or. 635 (242 Pac. 603), the admission of evidence of the possession of such liquor in a cause wherein such possession constitutes a distinct offense, having no relation to or bearing upon the issues to be determined, will constitute reversible error. As supporting this doctrine, see Gillett, Indirect and Collateral Evidence, § 57, where it is written that proof of one distinct substantive crime is not admissible to prove another offense unless there is some logical connection between the two from which it can be said the proof of one tends to establish the other. See, also, *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892); *State* v. *Casey,* 108 Or. 386 (213 Pac. 771, 217 Pac. 632); Underhill's Criminal Evidence (3 ed.), § 154. Treating of the general principles of evidence, our Code provides that collateral questions should be avoided, but that it is within the discretionary power of the court to permit inquiry into a collateral fact "when such fact is directly connected with the question in dispute, and is essential to its proper determination": Or. L., § 725.

The State charges that, when the defendant left the hotel where she had been drinking intoxicating liquor with one Van Cordtlandt, she went forthwith to her automobile, and that within ten minutes thereafter, while speeding on one of the principal thor-

oughfares of the City of Salem, she struck young Sawyer down. The record shows that a few minutes later she was taken into custody by two traffic officers, who testified that, at the time of her arrest she was under the influence of intoxicating liquor. One of these officers testified that he found two pints of intoxicating liquor in defendant's automobile, and this liquor was received in evidence by the court.

Now let us revert to the allegation in the indictment that the defendant drove and operated an automobile upon a described public highway "while under the influence of intoxicating liquor." To prove that averment, it was incumbent upon the State to establish that defendant was under the influence of intoxicating liquor when the offense was committed, and to this end it was relevant to admit in evidence the bottles of intoxicating liquor that were found in her possession within a few minutes after the commission of the involuntary homicide alleged in the indictment. It was a relative circumstance tending to corroborate other evidence. The relevancy of such testimony is taught by the foremost authorities on criminal law, and is universally recognized by courts in administering that law. Among the many decisions supporting this principle, see the case of *Hart* v. *State,* 26 Ga. App. 64 (105 S. E. 383), where the Court of Appeals of Georgia said:

"In the trial of such a case, evidence tending to show that the operator of the vehicle had whisky about his person, or in the vehicle with him, is relevant, being a circumstance for consideration by the jury upon the issue as to the operator's use of intoxicating liquor."

See, also, *Parroccini* v. *State,* 90 Tex. Cr. Rep. 320 (234 S. W. 671), where evidence that the defendant

had wine in his possession was held admissible to show negligent homicide while driving an automobile. To similar effect is *State* v. *Hatcher,* 303 Mo. 13 (259 S. W. 467).

6. Counsel for defendant eloquently plead that the defendant did not know how the intoxicating liquor "got into her car." This argument is of no avail. The alleged possession, whether knowingly or unwittingly, of the intoxicating liquor by Mrs. Lockwood was a matter for the exclusive determination of the jury.

We have carefully considered all of defendant's assignments of error, and fail to find any valid reason for a reversal of this cause. We therefore direct its affirmance. AFFIRMED.

RAND, C. J., and BEAN and BELT, JJ., concur.