Argued at Pendleton, October 29; affirmed November 26, 1929

STATE *v.* ERNEST PATRICK.

(282 Pac. 233)

For appellant there was a brief and oral argument by *Mr. Frank G. Dick.*

For respondent there was a brief over the names of *I. H. Van Winkle,* Attorney General, *Mr. Francis V. Galloway,* District Attorney, and *Mr. Edwin D. Hicks,* Deputy District Attorney, with an oral argument by *Mr. Galloway.*

BEAN, J. The circumstances necessary to notice are about as follows: The sheriff of Wasco county, Oregon, raided a moonshine still about two and one-half miles from The Dalles-California highway, at what is known as the head of Cow Canyon. The still outfit was located on land belonging to the Rooper Livestock company. The still was approximately one and one-half miles from the cabin of one N. D. Caven. Caven owned a small farm 10 or 12 miles west of Shaniko near the junction of The Dalles-California and Sherman highways, a portion of which was rented to defendant Patrick in November or December, 1927, for one year. Patrick farmed the same while Caven worked for a neighboring farmer. Patrick occupied the Caven buildings, to which Caven returned in 1928, a short time before the lease expired. Patrick, his wife and Caven were all living together on the Caven farm when George B. Skinner arrived and stayed at the same place. Shortly thereafter defendant Patrick and his family moved to Maupin, but returned to the Caven farm several times, as he claimed, to get portions of his personal effects, livestock, etc. The state claimed that these trips were partly for the purpose of further-ing his moonshine operations. At the time of the seizure the sheriff also searched the cabin of Caven and several bottles, jugs, etc., and a small quantity of liquor, consisting of the dregs or leavings in some bot-tles, were found.

George B. Skinner, a boy 20 years of age, was at the Caven cabin and subsequently became a codefen-dant with Patrick. Skinner pleaded guilty under the indictment and was the principal witness for the state upon the trial of Patrick. At the time of the seizure the sheriff arrested N. D. Caven. Defendant Patrick

was apprehended at the town of Maupin, some 28 miles away. Soon after Skinner was arrested he told all of his relations with defendant Patrick in the operation of the still in question. Caven pleaded guilty to the charge of the possession of liquor that was found at his cabin.

The testimony tended to show that about Thanksgiving time in 1928 defendant Patrick employed Skinner to operate this still and agreed to pay him wages of $50 per month. Thereafter, Patrick furnished supplies of corn and sugar for the mash and gasoline for the fuel and Skinner set and ran off a batch of moonshine prior to the seizure on January 16, 1929. Skinner stayed at the Caven cabin most of the time while the still was actually in operation, spending only 10 or 12 days over at the still. Patrick spent little time at the still. The evidence indicated that Patrick originally purchased the gasoline stove, a part of the moonshine outfit and procured some parts for this stove, that he paid for some gasoline which Skinner had previously obtained for these operations and paid for the corn and sugar for this last batch of moonshine, when it was delivered at the Caven ranch.

■ Upon cross-examination of N. D. Caven, a witness for the state, counsel for defendant propounded to the witness the following question:

"Mr. Caven, I will ask you if you did not on the evening of the 23d of December, 1928, at Maupin, while in Mr. Fraley's pool hall and restaurant, and in the presence of H. M. Green, Patrick, Shorty Miller, Con Buckley and Mr. Henenegen,—Tom Henenegen, at a time when you were passing a bottle of liquor around to some of the boys to take, for them to take a drink, saying to one of them who then had the bottle, and I

don't know who it was at that time, who made a remark to you that there was not much in the bottle, and didn't you say in response to that answer, or to that statement, 'go ahead and drink it up, I have got plenty out there,' right in the presence of Tom Henenegen, didn't you make those statements?''

Upon objection of the state the testimony was excluded. This ruling is assigned as the first error. The question is in the form of one for the foundation of an impeachment. N. D. Caven was not upon trial for this offense and the acts referred to were, we think, too remote to have any bearing upon the case. Caven's possession of a bottle of liquor at Maupin, 28 miles away from the still, would not tend to connect him with the operation or possession of the still about a month later. The objection to the question was properly sustained and the answer tendered properly excluded. We arrive at this conclusion without much consideration of the right of Caven to be immune as a witness from incriminating himself.

██ Evidence tending to show that another party might have committed the crime would be admissible, but there should be proof of facts or circumstances clearly pointing out that some one beside the defendant was the guilty party, without the defendant participating therein. Remote acts disconnected with the crime itself cannot be separately proved for such a purpose: *State v. Fletcher,* 24 Or. 295 (33 P. 575); *State v. Lockwood,* 126 Or. 118, 127 (268 P. 1016). A witness cannot be impeached upon an immaterial matter. This is too well settled as the law to require citation of authorities.

The second assignment of error is the overruling of the objections of defendant Patrick to the following impeaching questions:

"Now, then, I will ask you if in that conversation she said to you—there was a dialogue between you and her in which these words were used, or words substantially like these: Did she ask, what is going on here? To which you replied, the joint is raided; and she asked then, did they get the outfit, and you answered, yes?"

The objection that a proper foundation, as to persons present, had not been laid for impeachment, being overruled, the witness answered in the affirmative.

The following question was also propounded to the witness Skinner:

"Did Mrs. Patrick at that time, in the presence of the DeJanviers, in substance warn you to get out of the country, and say these words, or words like these: Pat sent word to tell you to get the Hell out of the country, get clear out and stay out, as they are coming after you in about two hours?"

to which the same objection and ruling were made.

The foundation for these impeaching questions was as follows: Mrs. Patrick, the wife of the defendant and a witness in his behalf, in much detail upon cross-examination related that she saw her husband after his preliminary examination; that she afterward went to Maupin and then to the Caven ranch on January 16, 1929; that she again went to the Caven place on January 17 with Mr. and Mrs. De Janviers, and then testified as follows:

"Q. You had a conversation with George Skinner there both the night of the 16th and the night of the 17th?

"A. Yes.

"Q. I will ask you whether or not in a conversation with him in the front room of the Caven house on the night of the 16th you and he did not hold a dialogue in these words, or substantially these words: You asked him: 'What is going on here?' He said: 'The joint is raided.' You said, 'Did they get the outfit?' and he said: 'Yes.' Did you have with him a conversation at that time and place in substantially those words?

"A. I did not.

"Q. On the night of the 17th when you were in there to get your quilts and your provisions and to move away generally, did you have with Skinner at the same time and place—at the same place and in the presence of the same people the following conversation, or a conversation in which you said these words: 'Pat sent word out to tell you to get the Hell out of the country, get clear out and stay out as they are coming for you in about two hours.' Did you say that?

"A. I did not."

It therefore appears that the times and place of the conversations and the person with whom the witness conversed were definitely called to her attention and that she stated she had a conversation with George B. Skinner at the times and place mentioned, the only dispute being as to what Mrs. Patrick then said. Under these conditions, did the foundation for the impeachment serve the purpose of the law?

■ A witness may be impeached by evidence that he made, at other times, statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of the times, places and persons present; and he shall be asked whether he has made such statements or not, and, if so, allowed to explain the same. § 864, O. L.

This statute is declaratory of the common law rule. The purpose of requiring the observance of the formula prescribed is for the protection of the witness, so as to give him the opportunity of recalling the facts and correcting the statements, when immediately brought to his attention. When the statements are called to his attention, together with such circumstances of time, places and persons present as to enable him to readily understand the particular statements alluded to by the interrogator, and he then denies making them or attempts to qualify them, other persons, having knowledge of the facts, may be called to contradict the witness: *State v. Welch,* 33 Or. 33 (54 P. 213); *State v. Bartmess,* 33 Or. 110 (54 P. 167); *State v. Deal,* 41 Or. 437, 441 (70 P. 532).

■ Referring to the foundation for impeachment, 1 Wharton's Criminal Evidence, § 483, after detailing the "time, place, person and circumstances" required by the law, says, in substance, that the preliminary question should be such as to enable the witness to understand the occasion alluded to; but it is not necessary to use any established formula as that would be sacrificing a right to a technicality. Where the memory of the witness is refreshed by calling his attention to details, he may be able to show that he was honestly mistaken on the former occasion or that he was misunderstood and he ought to be permitted to explain the inconsistency in his utterances. The sufficiency of the foundation for impeachment is to be determined by the trial judge.

■ ■ The evidence, in the present case, laying the foundation, and also the impeaching evidence, differs widely from that in the case of *Gabel v. Oliver,* — Or. — (280 P. 496); and also from that in *Coles v. Harsch,*

130 Or. 392 (276 P. 248, 250), relied upon by the defendant. See also *State v. Miller*, 119 Or. 409, 420 (243 P. 72). In these cases the requirements of § 864, O. L., were not substantially complied with. In the present case, the witness Mrs. Patrick had all of the information required, so that she thoroughly understood what conversation was referred to which she had with George Skinner and her rights in the matter were protected, notwithstanding that perhaps all of the persons present, at the time one of the statements was made, were not mentioned in laying the foundation, and it was not shown at the other time that no one else was present except herself and George Skinner. The statute was substantially complied with and there was no error in permitting the impeaching testimony to be introduced.

■ The defendant complains that the court modified his requested instruction in giving one in the following language:

"The defendant Patrick in this case contends that one N. D. Caven was the owner and in possession of the still and still worm involved in this case, and that whatever joint possession Skinner had thereof arose through some arrangement made between Caven and Skinner. I charge you in that connection that Caven is not on trial in this case, and the fact, if it be a fact, that Caven may have had possession of that still would be no defense to the charge against Patrick, unless you believe from the testimony that Patrick did not have any possession of the still, or unless you had a reasonable doubt upon that question. There may be more than one, two, three or four persons in possession of a still, and the question for you to decide is whether or not Patrick had possession of the still jointly with Skinner, or anybody else for that matter. You have a right to consider the testimony as to any alleged possession of Caven of the still as throwing light upon

the question as to whether Patrick had any possession of it, but the mere fact in itself that Caven may have had possession of the still would not determine the question of whether or not Patrick had possession of the still.''

The instruction itself, as modified, shows that it properly presented that phase of the case to the jury.

There is no complaint by the defendant that he was not permitted to show all of the facts and circumstances indicating Caven's connection with the offense.

■ The defendant asserts error on account of the argument of the district attorney to the jury sharply criticizing defendant and likening him to a wrecker and defiler of character, for the reason of his employing the Skinner boy, 20 years of age, in an unlawful undertaking. The argument had some foundation in the evidence, and we cannot say that it went beyond the bounds of legitimate argument or that there was any error in regard thereto.

Finding no error in the record the judgment of the trial court is affirmed.                    AFFIRMED.