STATE, Respondent, *v.* STEVENS, Appellant.

(No. 7,643.)

(Submitted February 8, 1937.   Decided February 26, 1937.)

[65 Pac. (2d) 612.]

*Mr. E. C. Kurtz* and *Mr. Fred W. Schilling,* for Appellant, submitted an original and a reply brief; *Mr. Schilling* argued the cause orally.

192

*Mr. Enor K. Matson,* Attorney General, *Mr. Edmund T. Fritz,* Assistant Attorney General, and *Mr. George F. Higgins,* County Attorney of Missoula County, for the State, submitted a brief; *Mr. Carl N. Thompson,* Assistant Attorney General, argued the cause orally.

194

MR. JUSTICE STEWART delivered the opinion of the court.

Russell M. Stevens, alias John Roberts, was convicted of an attempt to commit rape in Missoula county and sentenced to serve a term of 30 years in the state prison. Motion for a new trial was made and overruled. The appeal is from the judgment and the order denying new trial; it is predicated upon eight assignments of error. However, the assignments contemplate three propositions: (1) The sufficiency of the information; (2) the sufficiency of the evidence to support the verdict and judgment; and (3) the refusal of offered instructions.

The charge was based upon the provisions of section 11590 of the Revised Codes, the material part of which reads as follows: ''An act done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime.''

The charging part of the information is as follows: ''That ▪ at the county of Missoula, State of Montana, on or about the 2d day of February, 1936, and before the filing of this information, the said defendant, being a male person over the age of 21 years, then and there being, did then and there wilfully, wrongfully, unlawfully and feloniously attempt to have sexual intercourse with one Ruth Box, a female over the age of eighteen years and not the wife of the defendant, and did then and there forcibly and violently and without the consent of the said Ruth Box, and did contrary to her wishes and expressed protest demand that she submit to sexual intercourse

and did then and there by force attempt to overcome her and accomplish an act of sexual intercourse," etc.

Defendant's demurrer to the information was overruled. At the trial he objected to the introduction of any testimony and made proper and strenuous objections at every stage of the proceedings. These objections were largely based upon the asserted contention that the information was insufficient by reason of the fact that neither the specific intent nor the specific acts employed in the perpetration of the alleged offense were set out.

The information must contain "a statement of the facts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." (Subd. 2, sec. 11843, Revised Codes.) "The * * * information must be direct and certain, as it regards—1. The party charged; 2. The offense charged; 3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense." (Sec. 11845, Id.)

Does the information meet the requirements of these two sections? We are of the opinion that it does. No one of common understanding can misunderstand what was intended by the language of the information. The defendant was charged, the offense was charged, and the circumstances of the offense were charged. True, the specific act or acts constituting the commission of the offense, or rather the things done in the prosecution of the attempt, were not charged in so many words. There was, however, the specific charge that the attempt to commit rape was made forcibly and violently, and against the will and without the consent of the prosecutrix; that the attempt was wilful, wrongful, unlawful, and felonious; and also that defendant did, contrary to the wishes and express protest of prosecutrix and by force, attempt to overcome her and accomplish an act of sexual intercourse. It seems that the charge could not be very much plainer than that, without pleading evidence.

It is argued that no overt act was charged, and authorities are cited to support that contention. We do not believe that such authorities are controlling in this case. Conceding, as we must, that the acts charged were general rather than specific, we still fail to see that any prejudice could have come to the defendant. He knew that he would be called upon to defend against any and all acts of force and violence which he might have used in the attempt to consummate the crime. In the case of *State* v. *Evans,* 27 Utah, 12, 73 Pac. 1047, it was said in the discussion of a similar matter: "This is not a case where the accused, under such an information, may be taken by surprise, as in case of a crime which may be committed in several different ways or with various means, and therefore the reason of the rule which requires the overt act or acts by which a crime was committed to be pleaded does not apply, and hence the rule itself ought not to be enforced." We fail to see how the defendant could have been prejudiced by the failure to be more specific. (Secs. 11853, 11874, 12125, Rev. Codes. See, also, *State* v. *Kelley,* 125 Kan. 805, 265 Pac. 1109.)

Defendant argues that intent was not sufficiently charged. We are aware of the rule that in this type of crime a specific intent to commit rape is an essential ingredient. Again we are unable to see how the intent could be much plainer. The information charged that defendant demanded that prosecutrix submit to sexual intercourse, and that he then by force attempted to overcome her against her express protest. It will thus be observed that nothing was left uncertain. No one was required to guess at his intent because of his acts. The charge was direct as to what his intent really was in the matter. The language of the opinion in the case of *United States* v. *Sugarman,* (D. C.) 245 Fed. 604, 606, is applicable on this phase of the case. There it was said: "Now, an attempt, in its very nature, includes and involves intent. So that it seems to me that, when the indictment alleged that there was an attempt to do a certain thing, it also, though not in so many words, stated

that he intended to do that certain thing. So that it seems to me it was not necessary, in addition to the words used, that there should have been any allegation that in attempting to do a certain thing he was intending to do that certain thing, because the two, under the circumstances, are practically synonymous." Here the charge is that the defendant proclaimed what he was going to do and then proceeded to try to do it. The circumstances in this case are even stronger than those involved in the *Sugarman Case,* supra. See, also, the following cases: *State* v. *Daly,* 41 Or. 515, 70 Pac. 706; *Fowler* v. *State,* 66 Tex. Cr. 500, 148 S. W. 576; *Cirul* v. *State,* 83 Tex. Cr. 8, 200 S. W. 1088; *State* v. *Evans,* supra; 2 Bishop, Crim. Proc., secs. 88, 89.

The contention that the information was too indefinite and uncertain as to the acts charged cannot be sustained either. Defendant contended that it was impossible for him to know what acts he would be called upon to defend against. Technically speaking, it was impossible for him to know just exactly what acts in furtherance of his general purpose he was charged with having done, but the major act was charged and if he desired specific information further than the information disclosed, he had a right to demand a bill of particulars. This court has specifically recognized that right in several cases. (*State* v. *Shannon,* 95 Mont. 280, 26 Pac. (2d) 360, 362, and cases there cited.) In the *Shannon Case* a quotation was made from a previous opinion (*State* v. *Gondeiro,* 82 Mont. 530, 268 Pac. 507), as follows: "When it is apparent to the court that the defendant, by reason of the general character of the charge, may have difficulty in preparing his defense, we think the trial judge should incline toward granting a motion for a bill of particulars; we commend the practice."

Defendant insists that the court should have required the county attorney to amend the information so as to make it more specific instead of proceeding on what might afterwards turn out to be a bad information. We do not agree with this contention. If the defendant required more information, he

had a right to apply for a bill of particulars. The opinion in the *Shannon Case,* supra, called attention to the fact that the modern tendency of criminal procedure has been distinctly towards simplification. Certainly the information in this case is much more specific than that required in crimes of a more serious nature. As we have indicated, the information could hardly have been made more specific without pleading the evidence, and that, of course, was unnecessary and would have been improper. We therefore say the information was sufficient.

The charge that the evidence is not sufficient to support the ▮ verdict is not borne out by the record. It is not necessary to recite the evidence at length. It is sufficient to say that the jury believed the prosecutrix, as is indicated by the verdict. She testified that she was badly beaten in the fight that ensued when she took her stand in defense of her right to refuse the demand for sexual intercourse. Many other witnesses testified as to her physical condition immediately after the occurrence. In the attempt to enforce his demands defendant early abandoned the "arts" of the seducer and immediately fell back upon the "weapons" of primitive man who knew no law except that "Might makes right." From the circumstances as detailed it is apparent that defendant was resolved to use, and did use, all the force at his command to carry out his design. His intent could only be determined by what he did. It was the duty of the jury to decide this from the facts and circumstances. It could not be a question for this court in the light of the fact that there was actually such evidence in the record on the point. (*People* v. *Moore,* 155 Cal. 237, 100 Pac. 688; *People* v. *Webster,* 111 Cal. 381, 43 Pac. 1114; *People* v. *Mit Singh,* 59 Cal. App. 64, 209 Pac. 1013.)

The only defense urged in behalf of the defendant was that ▮ he was intoxicated and that he did not know what he was doing. Subdivision 1 of section 10728, Revised Codes, provides: "No act committed by a person while in a state of

voluntary intoxication is less criminal by his being in said condition. But, whenever the actual existence of any particular purpose, motive, or intent, is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act.''

As bearing on the question of intoxication and the ability of the defendant to know and understand what he was doing, it is important to observe that the record discloses that in the perpetration of the attempt, and immediately thereafter, defendant did many things which tend to throw some light upon his mental capacity at the time. Before he committed the act he was able to drive to a place which he thought suitable for his purpose. In the course of the struggle he was able to get around with considerable agility, and was able to direct his effort toward overcoming the resistance of prosecutrix. Apparently the struggle continued in such a violent manner that at the end thereof defendant could have accomplished his purpose but for the fact that he was physically exhausted. After this, defendant was able to recover the shoes of the prosecutrix which he had thrown away during the struggle. He realized that she was in such a ''bloody mess'' that it might have been unwise to take her to her home. He offered to take her downtown and have her washed up; however, she refused and insisted that she be taken home. From her home defendant was able to drive to his hotel in Missoula, a distance of a mile and a half or more from the encounter. He was able to find his room and undress himself for bed.

From this summary of what happened at the scene of the crime and thereafter it seems reasonable to believe that the jury had basis for the exercise of their prerogative. They had a right to believe that in spite of his alleged drunken condition the defendant knew what he was trying to do and was responsible. At best, the point was in controversy. The facts speak on one side, while, on the other hand, the defendant pro-

claims his incapacity. The verdict of the jury in such circumstances should not be disturbed.

The other specification of error involves the refusal of the ▉ court to give two certain instructions offered by the defendant. These instructions bore on the question of intoxication and the alleged irresponsibility of the defendant for his acts as a result thereof.

We have examined all of the instructions given and conclude that, as a whole, they fairly covered and adequately expressed the law applicable to the case under the evidence given by the witnesses. The court did instruct on the question of intoxication. It gave the provision of the statute (subd. 1, sec. 10728, supra) as an instruction on the subject. Generally, courts do not approve of giving abstract propositions of law as instructions to juries. Here, however, the statute appears to have been entirely appropriate and all that was required in the circumstances. California has the identical statute, and the courts of that state have approved the giving of it as an instruction to a jury. (8 Cal. Jur., sec. 379, p. 332.)

In another instruction the court advised the jury on the ▉ question of intent as follows: ''You are instructed that a specific intent to rape is an absolutely essential ingredient to an attempt to rape and must accompany the means to effect the crime.'' We are of the opinion that the instructions fully covered the special defense asserted by the defendant and that the court's refusal to give the offered instructions was without prejudice to defendant's case.

No error appearing, the judgment and order are affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.