STATE, Appellant, *v.* HAHN et al., Respondents.

(No. 7,692.)

(Submitted September 27, 1937.  Decided October 13, 1937.)

[72 Pac. (2d) 459.]

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Harold K. Anderson,* County Attorney of Lewis and Clark County, and *Floyd C. Small,* Deputy County Attorney, for Appellant, submitted a brief; *Mr. Anderson* argued the cause orally.

*Mr. Sherman W. Smith,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

The state has appealed from a judgment sustaining a demurrer to an information purporting to charge defendants with the operation and management of a lottery in violation of our

statutes. It is the contention of defendants that the information does not state a public offense.

The information was drawn substantially in the language of sections 11149 et seq., Revised Codes, which is our statutory enactment against the operation of lotteries. It also set out in detail the procedure by which the alleged lottery, known as "skill ball," was operated. Briefly summarized, it was substantially as follows: Participants in the game were accommodated with seats in defendants' establishment around rows of counters; cards were sold and distributed to all who wished to play; they were sold for 10 cents each, with no limit on the number of cards each participant might play; each card had printed upon it twenty-four differently numbered squares, with one square in the center of the card marked "free"; the squares were arranged in rows of five. The money having been collected for the cards, the game commenced: An operator handed one of the participants a ball, who tossed it into a square box across the counter from him; such box contained seventy-five pockets numbered from one to seventy-five; the ball lodged in one of these pockets, and the number of such pocket was then announced, and all participants having that number on their card or cards placed a bean thereon; the box or hopper of numbered squares was then moved in front of the next participant, who was handed a ball with which to repeat the process, and so on down the line. Eventually someone in the room covered five squares in a row horizontally, vertically, or diagonally. When this occurred, such person or persons called out and, if the completed row checked with the numbered pockets in which the balls had lodged, then such individual was handed a cash prize. The cards were then immediately resold and the whole process repeated to the ultimate conclusion of another pay-off in cash.

The information also alleged that each participant was handed a coupon at the time he paid his 10 cents for a card. In fine print on each coupon the statement was printed that it represented a value of 10 cents when applied on the purchase of any of the premiums offered, and also that it represented the true value of the purchase made.

It is important to understand what legal requisites are necessary to charge the offense of operating a lottery under our statutes. They are generally considered to be three: The offering of a prize; the awarding of the prize by chance; and the giving of consideration for an opportunity to win the prize. (38 C. J. 289; 17 R. C. L. 1222.) It must next be remembered that the sufficiency of the information was challenged by demurrer which admitted all facts therein sufficiently pleaded.

Defendants contend that the court's action in sustaining the demurrer was correct for three reasons, in substance as follows: That, as set out in the information, no consideration was paid for the privilege of playing skill ball, but that the game was free to the patrons of the establishment; that skill, and not pure chance, was involved in playing the game which enabled the most skillful player to win; and that cash was not given to the winner, but, in lieu thereof, a card representing a value if taken out in trade.

The county attorney first set out his charge in the language of the lottery statute, sections 11149 et seq., supra, which in essence contains the legal requisites mentioned. Ordinarily a charge set out in this manner is sufficient. (*State* v. *Shannon,* 95 Mont. 280, 285, 26 Pac. (2d) 360.) He went further, however, and proceeded to set out in detail the game which he claimed violated the lottery laws of the state. It is conceivable that in pursuing this method a prosecutor might plead himself out of court by detailing facts which, when challenged by demurrer, would show themselves to be without the ban of the statute. This, however, was not true of this information, but, on the contrary, the essential elements necessary to constitute a lottery were supplied by the particulars. We shall not here repeat, although pertinent, what we have so recently reiterated with relation to the rules of pleading in a criminal case. (See *State* v. *Stevens,* 104 Mont. 189, 65 Pac. (2d) 612; section 11843, subd. 2, and section 11845, Rev. Codes.)

It is plain that the defendants were sufficiently advised as to the charge. If more details and facts were desired and neces-

sary, the remedy was by way of a request for a bill of particulars. (*State* v. *Stevens*, supra; *State* v. *Shannon*, supra.)

Defendants argue that the information did not show that the final resting place of a ball thrown by a participant was determined purely by chance, and, consequently, did not properly charge a violation of the lottery law. Such argument, we think, is based upon a misconception of the fundamental elements which distinguish a game of skill from a game of chance. It is apparent from the description of the game as set forth in the information that any one of the cardholders could have been the winner of the prize, and that, regardless of whether he ever had an opportunity to toss even one ball into the box. This necessarily follows because, whenever a number was announced, every person having a card bearing such number could cover it with a bean, and, obviously, only one person threw a given ball to determine such number. The possible exception to this was an instance where one participant happened to have four squares already covered and needed but one certain number to win when it came his turn to throw a ball. If he were then skillful enough, it is obvious that he could have completed the row and turned his card into a winner by tossing the ball into the pocket bearing that number. This instance would not convert the game into one of pure skill. It must not be forgotten that the first four numbers covered on the card in the case supposed were thrown by some of the other participants in the game over whose skill no other person had control. Likewise the exception falls down in view of the fact that the one number thrown might also have been the only number needed by some other participant, in which case there were two persons who filled out their cards as the result of one man's skill.

It is not enough under the universally recognized tests between games of skill and of chance that some skill is involved in the game. That fact alone will not save it from condemnation as a lottery. The test which we believe to be the sound one is well stated in the case of *People ex rel. Ellison* v. *Lavin*, 179 N. Y. 164, 71 N. E. 753, 755, 1 Ann. Cas. 165, 66 L. R. A. 601, as follows: ''The test of the character of the game is not whether

it contains an element of chance or an element of skill, but which is the dominating element that determines the result of the game." (See, also, 38 C. J., sec. 5, pp. 290, 291.)

It is apparent from the information in question that the skill of no one of the participants could sufficiently govern the result of the game, and therefore the element of chance was sufficiently charged. For a thorough discussion on the element of chance, see 23 Virginia Law Review, p. 431; also see the case of *People* v. *Babdaty*, 139 Cal. App. (Supp.) 791, 30 Pac. (2d) 634, which held an almost identical scheme to be a lottery.

The contentions that the information does not charge the elements of prize and consideration are without merit. In support thereof it is urged that the information sets out that a coupon was given in return for the payment of 10 cents, which purported to represent the full cash value of the purchase. This, defendants argue, made the game merely incidental to such purchase, and the prize given one of merchandise rather than cash. This argument seems tenuous indeed when the language of the information is considered as a whole. We can hardly conceive that defendants were misled thereby. If they were, it was again because of a misapprehension of the essential elements of a lottery, because it is immaterial, under the decisions, whether the prize was in cash or in merchandise, so long as it was awarded by chance and a consideration paid for that chance. (38 C. J., sec. 8, p. 292; 17 R. C. L., sec. 10, p. 1222.) The cases cited in defendants' brief are not in point. They do deal with the element of consideration, but they apply more properly to another and different class of cases not here under consideration.

The information was sufficient as against a general demurrer. After a careful consideration of it, we find it impossible to agree with any of the contentions urged by defendants.

For the foregoing reasons, the judgment sustaining the demurrer is reversed, and the cause remanded, with directions to overrule the demurrer and require the defendants to plead.

Mr. Chief Justice Sands and Associate Justices Anderson, Morris and Angstman concur.