STATE, Respondent, *v.* BOSCH, Appellant.
No. 9114.
Submitted January 28, 1952. Decided March 21, 1952.
Rehearing denied April 14, 1952.
242 Pac. (2d) 977.

Mr. Rockwood Brown, Mr. Horace S. Davis, Mr. Norman Hanson, and Mr. William H. Bellingham, all of Billings, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mrs. Vera Jean Heckathorn, Asst. Atty. Gen., Mr. Charles B. Sande, County Attorney, Mr. Jerome Anderson, Deputy County Atty., Billings, for respondent.

Mr. Davis, Mr. Anderson and Mrs. Heckathorn argued the case orally.

MR. JUSTICE BOTTOMLY:

Upon an information charging him with the crime of manslaughter W. P. Bosch was found guilty by the jury. The court entered judgment on the verdict, from which, and from an order denying him a new trial, he has appealed.

On September 26, 1949, defendant W. P. Bosch owned and operated the Cheerio Bar at Laurel, Yellowstone County, Mon-

tana. He had made arrangements to meet with the bartenders union in Billings between 7:30 and 8:00 p. m. that evening, as he had had some trouble with the union and his shop card had been taken away from him. Defendant was busy waiting on customers at his bar and lounge and for that reason didn't get started earlier. About 8:00 p. m. he talked by telephone to a man in Billings (Miller) to see if the union officials would wait for him to arrive there. The man in Billings told defendant that the meeting was over and then ready to leave; he told defendant they would stick around, and defendant told him, "We're leaving right now. We'll be down for the meeting." Defendant then left his daughter in charge of the bar and lounge and at approximately 8:25 p. m. he left the Cheerio in Laurel, driving his 1941 Buick automobile, accompanied by Lewis Glenn Voeltz and Pat Kroh, all three sitting in the front seat. According to defendant's testimony, during the afternoon of September 26th the defendant had consumed at least four mixed whisky drinks commonly known as highballs, the last such drink being taken at about 7:20 p. m. Leaving Laurel, defendant drove his automobile easterly over highway No. 10 towards Billings. About eight miles west of Billings defendant observed a truck or van ahead of him. He could see the truck and the lights; he could see the van or large truck some three or four blocks ahead. He could see the left hand lane ahead and there was no car coming toward him. The van or truck was going in the same direction he was and in the same lane. As he got closer he saw that there was a car immediately behind and following the truck or van. The car following the truck had no tail lights. It was close and defendant was going to run into that car, so defendant turned to the left to pass and, as he contended, was confronted with a car coming toward him from the opposite direction, in the left hand lane, and in order to avoid the approaching car, defendant continued with brakes applied and skidded on across the highway to his left, into the borrow pit, the sides of which were quite steep and which was some four feet deep, on the northerly

side of the highway. At that time defendant admits he was traveling between 50 and 55 miles an hour. When the automobile came to rest, Lewis Glenn Voeltz and Pat Kroh, being the men riding in the car with defendant, were found in the borrow pit some 90 feet westerly of where the automobile stopped against a cement drain culvert. Both Lewis Glenn Voeltz and Pat Kroh were found unconscious and both died before reaching the hospital or shortly thereafter on September 26, 1949.

Defendant specifies as error the admission of the testimony of witnesses Benson and Hall as to their opinion of the speed of the defendant's automobile.

Witness Benson, a Montana highway patrolman, was on duty the night of the wreck and was traveling westerly on the Billings-Laurel U. S. highway No. 10 at approximately 8:35 p. m., when he observed ahead the lights of an automobile come from the south lane and across to the north of the highway where the lights would disappear and then reappear at an angle and thereafter disappeared. There was no vehicle traveling ahead of his car going toward Laurel between his car and the lights of the above mentioned car. He immediately increased his speed and within a few seconds was at the scene of the wreck. He found the defendant standing by his automobile which was headed into a drain ditch, the front end having hit the cement drain culvert, completely wrecking the front end.

Witness Benson testified further that defendant's actions and talk were incoherent and he walked very unsteadily; that he smelled liquor on defendant's breath and believed defendant under the influence of liquor. Benson found Pat Kroh and Lewis Voeltz lying unconscious in the borrow pit, some 90 feet west of where the car was wrecked. He immediately called ambulances and had them taken to a Billings hospital. Benson then took defendant to St. Vincent's Hospital; then to the Settergren Funeral Home, and then returned to the scene of the accident and made his measurements.

Patrolman Benson, with eleven years service as such, had

 investigated many automobile wrecks, had special training in traffic problems, attended traffic schools where he studied the cause and effect of skid marks, as well as his personal experiences. Upon examination and measurements of the skid marks made by the defendant's automobile from the point it started to where it went off the oil, he found that the longest skid mark was 181 feet. From the tables furnished by the Northwestern Traffic Institute, and upon his experiences, Benson gave it as his opinion that the defendant's automobile was traveling at the time the skid marks were made at the minimum speed of seventy-two miles an hour.

Arthur Hall, an automobile mechanic with ten years' experience, except while a mechanic in the Air Force, had attended a braking school, had attended mechanics' school at Lincoln, and in his regular employment, he, from day to day takes customer's cars on the highway to adjust brakes and correct brake grab, and was familiar with skid marks from his own experience. He testified he heard the screech of defendant's automobile at the time of the accident which took place across the highway from his driveway; that he was at the scene of the wreck about the same time as witness Benson arrived; that in his opinion in order to leave tracks like that, the car would have to go at an excessive rate of speed, of over 60 miles an hour.

Whether the evidence given by witnesses Benson and Hall was worthy of belief and the weight to be given it was a matter for the jury to decide. See State v. Porter, 125 Mont. 503, 242 Pac. (2d) 984.

In a number of cases experts and others have been allowed to give opinions as to the rate of speed of a motor vehicle, not upon their observation of the moving vehicle only, but upon skid marks or other impressions made just before or at the time of the accident or wreck. See Jackson v. Vaughn, 204 Ala. 543, 86 So. 469; Luethe v. Schmidt-Gaertner Co., 170 Wis. 590, 176 N. W. 63. In McCarthy v. Souther, 83 N. H. 29, 137 A. 445, an expert was permitted to testify as to the speed of an

automobile based on the fact that the handle of the car door, which decedent struck, was broken by the impact. In Stamper v. Scholtz, Tex. Civ App., 29 S. W. (2d) 883, 884, the court said: "Almost any person acquainted with the movements of cars when brakes are applied suddenly would be competent to give an opinion from the marks of the skidding and other circumstances as to the speed of the automobile." Compare Fannon v. Morton, 228 Ill. App. 415.

In Heidner v. Germschied, 41 S. D. 430, 171 N. W. 208, even a non-expert who had not seen the car in motion was permitted to given an opinion as to the speed of an automobile based on an examination of the marks left by it when it skidded. Compare Moeller v. St. Paul City Railway Co., 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371. In State v. Robinson, 109 Mont. 322, 96 Pac. (2d) 265, 268, wherein a witness testified as to his opinion as to the rate of speed of an automobile which he assumed to determine by the sound of the tires on the highway, the court said: "But in our judgment he had a right to express the opinion, and the court to permit it." See 20 Am. Jur., Evidence, sec. 805, p. 678; Moeller v. St. Paul City Ry. Co., 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371; State v. Miller, 119 Or. 409, 243 Pac. 72, 75; People v. Donnelly, 95 Cal. App. (2d) 595, 213 Pac. (2d) 502. In State v. Clark, Utah, 223 Pac. (2d) 184, 190, in speaking of the skidding of an automobile, the court said: "It is evidence, however, that may be considered along with other evidence in determining carelessness or negligence." In People v. Tucker, 88 Cal. App. (2d) 333, 198 Pac. (2d) 941, 944, the court said: "Of course any such opinion may be accepted or rejected by the jury. * * * The law makes no distinction in weighing evidence between expert testimony and evidence of other character. * * * It is for the jury and not the reviewing court to determine the weight to be given such evidence." Compare Toms v. State, Okl. Cr. App., 239 Pac. (2d) 812, 818, 819; Holt v. State, 84 Okl. Cr. 283, 181 Pac. (2d) 573, 581.

A highway patrolman with many years of experience in

handling an automobile, investigating wrecks and accidents, with the benefit of schooling and study courses dealing with skid marks and related matters is as much of an expert in his line as any other specialized person in his respective field. So too with a mechanic who specializes in auto mechanics, continually adjusting and trying out brakes and the other mechanical parts of the automobile. Each of these witnesses was qualified to give his opinion in the matter and the trial court did not commit error in permitting their testimony which was for the jury to consider and give such weight as they might determine under the instructions of the court.

The court instructed the jury on this point as follows: "You are instructed that duly qualified experts may give their opinions on questions in controversy at this trial. To assist you in deciding such questions, you may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. You are not bound to accept the opinion of an expert as conclusive, but you should give it the weight to which you shall first find it to be entitled."

We find no error in admitting the testimony of the aforesaid witnesses.

Defendant specifies as error the giving of the court's instruction No. 10 to the effect that certain specified acts, six in number, were unlawful, the instruction concluding by stating: "You are further instructed that the commission of an unlawful act, not amounting to a felony, constitutes criminal negligence."

R. C. M. 1947, sec. 94-2507, defines manslaughter as:

"Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds. * * *

"2. Involuntary, in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection."

The above instruction No. 10 was followed by instruction No. 11, the giving of which is also assigned as error by de-

fendant. The instruction was as follows: "You are further instructed that if you are satisfied and believe to a moral certainty and beyond a reasonable doubt that Lewis Glenn Voeltz, a human being, came to his death by being injured in an automobile driven by the defendant, W. P. Bosch, upon a highway or public thoroughfare in Yellowstone County, Montana, and if you further believe beyond a reasonable doubt that the defendant, W. P. Bosch, was at said time committing an unlawful act, not amounting to a felony, as in these instructions defined, and that said automobile was then and there being so driven in violation of law by the defendant, and if you further find that the unlawful act of the defendant was the proximate cause of the injury and resultant death of him, the said Lewis Glenn Voeltz, then you may find the defendant, W. P. Bosch, guilty of manslaughter as charged in the information."

A court cannot be expected to cover every point in one or two instructions. The court thereafter by instruction No. 24 gave to the jury a particular meaning of "criminal negligence" as follows: "You are instructed that by the term 'criminal negligence' *as used in these instructions,* is meant gross negligence, such negligence as amounts to a wanton, flagrant, or reckless disregard of consequences or wilful indifference of the safety or rights of others." Emphasis supplied.

The court also gave instruction No. 25 as follows: "You are instructed that in order to impose criminal liability for a homicide caused by criminal negligence, there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue. Criminal negligence is negligence which is aggravated, culpable, gross or reckless. That is, for you to find the defendant Bosch in this case guilty of criminal negligence you must believe from the evidence beyond a reasonable doubt that the conduct of the defendant Bosch was such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or

in other words, a disregard for human life or an indifference to consequences.''

Under the familiar and well-established rule in this juris- ██ ██ diction, in determining the effect of a given instruction all the instructions must be read and considered as a whole. Koppang v. Sevier, 106 Mont. 79, 92, 75 Pac. (2d) 790; State v. Darchuck, 117 Mont. 15, 26, 156 Pac. (2d) 173.

Defendant contends that instructions No. 10 and No. 11 are in irreconcilable conflict with instructions 25 and 26. We think not. The general rule is that an instruction which states the law inaccurately or incompletely or even incorrectly in part may be cured by others which correct the error or render it innocuous. 23 C. J. S., Criminal Law, sec. 1323, page 932. Where it can be said that the unobjectionable instructions cure objectionable instructions, the former must either directly refer to and explain and qualify the latter or be supplementary to them and supply what was omitted. 23 C. J. S., Criminal Law, sec. 1323, page 941. Here instruction No. 24 specifically pointed out that *as used in these instructions,* the term ''criminal negligence'' is to mean gross negligence, such negligence as amounts to a wanton, flagrant or reckless disregard of consequences or wilful indifference of the safety or rights of others.

This court in reviewing the instructions of a trial court will examine them as a whole. While one or more paragraphs, standing alone, may be inaccurate or even erroneous, yet if these are qualified and explained by other portions of the charge *in pari materia,* and taken together with them and the rest of the charge, fully and fairly submit the case to the jury, the verdict and judgment should be sustained.

Defendant assigns as error the failure to give his requested instruction to find the defendant not guilty. Considering the evidence in the case, we think the trial judge was right in refusing the offered instruction.

It cannot be presumed that the jury seized upon the one contended objectionable sentence in the charge as warranting them to declare the defendant guilty and disregarded the

painstaking efforts of the court to properly instruct them on the law. Compare State v. Daems, 97 Mont. 486, 37 Pac. (2d) 322. Taken as a whole the instructions given correctly state the law.

Defendant assigns as error the refusal to give certain other instructions offered and the giving of certain instructions over defendant's objections. We have examined them in detail. The instructions given by the court were of more than usual length and appear to cover every conceivable phase of the crime of which defendant was charged. When instructions as a whole correctly state the law, error does not exist. See State v. Espelin, 106 Mont. 231, 237, 76 Pac. (2d) 629. We find no prejudicial error in the instructions given or refused.

Under the evidence in this case the jury was warranted in ██ believing that the defendant's car was out of his control and traveling at an unlawfully high rate of speed immediately prior to and at the time of the accident. The defendant admitted that his car was, at the time of passing the car and truck, immediately before the accident, traveling at 50 or 55 miles per hour. Besides all other evidence of speed, the badly wrecked front end of defendant's car demonstrates that it still had considerable momentum and therefore speed when it came in contact with the cement culvert.

Witnesses testified to having smelled liquor on defendant's breath at the scene of the accident and later at the hospital. The jury was warranted also in believing that the defendant's car was operated in a reckless manner indicating a wilful disregard for his own safety and the safety of others. Under the facts in this case our conclusion is that the instructions given covered the case adequately and were as favorable to the defendant as he reasonably could ask.

The tremendous loss of life and injury occurring daily from the operation of automobiles on our highways is a matter of common knowledge. It was the duty of the defendant to drive his car in conformity with the law of the road. It was his duty to have his automobile under control at all times. The defend-

ant's testimony on this point is as follows: "Q. Now one more question, Mr. Bosch, just so the jury may understand you. Did you or did you not turn your car—did the car turn to the north lane of traffic to avoid hitting the car ahead of you or did you drive your car out into the north lane under control to pass those vehicles? A. I turned off in the first place to avoid hitting that car behind the truck, because I did not notice them until I was pretty close. But I knew before I pulled up behind the truck my view was clear. There was no car coming from the other direction. Of course when I pulled up there, I pulled out. I did not want to hit the car behind the truck, so I pulled out to the left so I would not meet head on with the car coming from the other direction."

The defendant was bound to anticipate that he might come up behind another motor vehicle and in such event have his car under such control as to be able to slow his speed sufficiently to remain at a safe distance behind the same; when behind the truck and car he was unable to see that the north lane was clear for passing. By his entering the north lane at high speed and without ascertaining that it was clear for passing, he not only imperiled himself and those with him, but any person approaching in the north lane.

Not every violation of the law of the road amounts to criminal negligence for the reason that not all such negligence is reckless, wanton and of such character as shows an utter disregard for the safety of others; but where, as here, excessive speed is manifest in coming up behind a vehicle and in passing other cars at such speed without being able to see a clear lane, it demonstrates a disregard for one's own safety and the safety of others and a disregard for the safety of persons approaching; such reckless, wanton disregard for human life and indifference to consequences is evidence of criminal negligence. Compare People v. Przybyl, 365 Ill. 515, 6 N. E. (2d) 848, 850.

By information filed October 6, 1949, the defendant was charged with the crime of manslaughter, it being alleged that on or about the 26th day of September 1949 in Yellowstone

County, Montana, he "did, then and there, wilfully, wrong-fully, unlawfully, knowingly and feloniously, kill one Lewis Glenn Voeltz, a human being." Compare: State v. Gondeiro, 82 Mont. 530, 535, 268 Pac. 507; State v. Souhrada, 122 Mont. 377, 380, 204 Pac. (2d) 792.

Following the arraignment, the defendant on October 13, 1949, entered a plea of not guilty and on October 11, 1949, by his counsel served upon the county attorney and filed a written motion and demand for a bill of particulars together with an affidavit of the defendant in support thereof. The demand was that the county attorney file and serve a bill of particulars setting forth the facts of the charge contained in the information, specifying:

"1. By what means it is charged in the information the defendant killed Lewis Glenn Voeltz.

"2. The particular act or acts or omission or omissions of the defendant whereby it is charged in the information the defendant killed Lewis Glenn Voeltz."

Omitting the formal parts thereof, defendant's supporting affidavit recites:

"That he is the defendant in the above entitled action; that he makes this affidavit in support of his motion and demand for a bill of particulars of the offense charged herein because he does not know and cannot ascertain from the Information or elsewhere, what specific act or acts or omission or omissions of this affiant the State of Montana charges wrongfully caused the death of one Lewis Glenn Voeltz; that affiant alleges that the charge against this affiant in the Information contained is so general in its allegation that he cannot prepare his defense for want of any knowledge or means of ascertaining how The State of Montana charges the said Lewis Glenn Voeltz came to his death; that specifically, because of the general nature of the charge in the Information, this defendant does not know and cannot ascertain whether the death of said Lewis Glenn Voeltz is charged to have been caused:

"1. By and in the course of a sudden quarrel between him-

self and the said deceased and in the heat of passion and without malice; or

"2. By failing to stop while driving a motor vehicle upon the highways of this state when signalled so to do by a highway patrolman of this state in the course of his duties as such officer; or

"3. By reason of his criminal negligence (a) in driving a motor vehicle on the highways of this state at a rate of speed in excess of that allowed by law; or (b) in driving a motor vehicle upon the highways of this state in a reckless and wanton manner, dangerous to human lives; or (c) in driving a motor vehicle on the highways of this state while in an intoxicated condition or under the influence of liquor."

The trial court granted defendant's motion whereupon the county attorney on October 24, 1949, served upon defendant's counsel the following bill of particulars, viz.:

"Comes now the above named plaintiff, by and through the undersigned, its attorney and County Attorney in and for the County of Yellowstone, State of Montana, and pursuant to the order of the Court, hereby makes and files a Bill of Particulars in this cause, and for its Bill of Particulars alleges and sets forth the following:

"That the above named defendant, W. P. Bosch, caused the death of Lewis Glenn Voeltz in the manner and at the time alleged in the information filed herein under the following circumstances, to-wit: That an automobile then and there driven by the defendant, W. P. Bosch, and then and there occupied by the said W. P. Bosch, Pat Kroh and Lewis Glenn Voeltz, was negligently driven under the following circumstances:

"(a) That defendant drove and operated an automobile at the time set forth in the information, upon and over a highway and public thoroughfare of the State of Montana, in Yellowstone County, Montana, while he was then and there under the influence of intoxicating liquor, which fact was an efficient and producing cause of the accident which resulted in the death of Lewis Glenn Voeltz.

"(b) That the defendant negligently, wrongfully and unlawfully, at the time referred to in the information, drove an automobile over a highway and public thoroughfare in the State of Montana, County of Yellowstone, with a disregard for human life and with an indifference to the consequences of the reckless manner in which said automobile was being driven and under circumstances incompatible with a proper regard for human life, and with a disregard for his own safety and the safety of others riding with him in the automobile, which acts contributed to and were proximate causes of the death of the said Lewis Glenn Voeltz;

"(c) That defendant wrongfully and unlawfully, at the time mentioned in the information, drove a motor vehicle on a public highway in Yellowstone County, Montana in a grossly reckless, culpable and negligent manner in that he drove said automobile, without maintaining control thereof, and at a rate of speed so great he could not control said automobile, and likewise, greater than was reasonable and prudent and proper, having regard for the conditions then and there existing on said highway, and that the said accident which resulted in the death of Lewis Glenn Voeltz was caused by such actions on his part, and that his actions as aforesaid, were the proximate result thereof.

"(d) That defendant wilfully, wrongfully and unlawfully, drove and operated an automobile on a public highway of the State of Montana at a speed greater than fifty-five (55) miles per hour during the hours when lights on the vehicles are required, which acts contributed to and were proximate causes of the death of the said Lewis Glenn Voeltz.

"(e) That defendant wilfully, wrongfully and unlawfully drove and operated an automobile on a public highway of the State of Montana, County of Yellowstone, which said highway was in a speed zone limited by law to the maximum speed of forty-five (45) miles per hour, at a speed greater than the maximum permissible speed of forty-five (45) miles per hour.

"(f) That defendant wilfully, wrongfully and unlawfully,

at the time mentioned in the information, drove and operated an automobile on a public highway of the State of Montana, and while driving said automobile, attempted to pass another vehicle when he, the defendant, was unable to see a sufficient clear road to pass and return to his side of the road before endangering an approaching vehicle coming in the opposite direction.

"That each and all of the foregoing acts of the defendant, W. P. Bosch, contributed to or were the proximate cause of the death of the said Lewis Glenn Voeltz."

On November 4, 1949, defendant's counsel served upon the county attorney and filed a motion for a further and more specific bill of particulars as follows:

"Comes now the defendant herein by his counsel, and respectfully moves the court for its order requiring the county attorney to file and serve a further and more specific bill of particulars herein particularly setting forth the facts of the charge contained in the information with greater certainty than as recited therein and in the bill of particulars heretofore furnished by the county attorney, of date October 19, 1949, and as follows, to-wit:

"1. By what means the defendant is charged with killing the said Lewis Glenn Voeltz in the course of driving and operating his automobile while he was then and there under the influence of intoxicating liquor, as is the specification in paragraph a. of the bill of particulars heretofore furnished, viz., whether by driving his automobile into or over the said Lewis Glenn Voeltz, or by collision with an automobile in which the said Lewis Glenn Voeltz than was riding, or by the upset of an automobile in which the said Lewis Glenn Voeltz was then riding, or otherwise.

"2. By what means the defendant is charged with killing the said Lewis Glenn Voeltz in negligently, wrongfully and unlawfully driving an automobile with a disregard for human life and with an indifference to the consequences of the reckless manner in which the said automobile was being driven,

and under circumstances incompatible with a proper regard for human life, and with a disregard for his own safety and the safety of others riding with him in the automobile, as are the specifications in paragraph b. of the bill of particulars heretofore furnished, viz., whether by driving his automobile into or over the said Lewis Glenn Voeltz, or by collision with an automobile in which the said Lewis Glenn Voeltz then was riding, or by the upset of an automobile in which the said Lewis Glenn Voeltz was then riding, or otherwise.

"3. The particular act or acts or omission or omissions of the defendant by him done or omitted whereby it is charged he negligently, wrongfully and unlawfully drove an automobile as alleged (a) with a disregard for human life, and (b) with an indifference to the consequences of the reckless manner in which the said automobile was being driven, and (c) under circumstances incompatible with a proper regard for human life and (d) with a disregard for his own safety and the safety of others riding with him in the automobile, as are the specifications in paragraph b. of the bill of particulars heretofore furnished, viz., whether the defendant charged with having driven an automobile in the manner as aforesaid, because he was then and there under the influence of intoxicating liquor, or drove at a speed greater than fifty-five (55) miles per hour during the hours when lights on the vehicles are required, or drove at a speed greater than forty-five (45) miles per hour, the maximum permissible speed, or attempted to pass another vehicle when he was unable to see a sufficient clear road to pass and return to his side of the road before endangering an approaching vehicle coming in the opposite direction, or otherwise.

"4. By what means the defendant is charged with killing the said Lewis Glenn Voeltz in wrongfully and unlawfully driving a motor vehicle in a grossly reckless, culpable and negligent manner, as are the specifications in paragraph c. of the bill of particulars heretofore furnished, viz., whether by driving his motor vehicle into or over the said Lewis Glenn Voeltz,

582

or by collision with an automobile in which the said Lewis Glenn Voeltz was then riding, or by the upset of an automobile in which the said Lewis Glenn Voeltz was then riding, or otherwise.

"5. The particular act or acts or omission or omissions of the defendant by him done or omitted whereby it is charged that he drove a motor vehicle in a grossly reckless, culpable and negligent manner (a) without maintaining control thereof, and (b) at a rate of speed so great he could not control his said automobile, and (c) greater than was reasonable and prudent and proper, having regard for the conditions then and there existing on the said highway, as are the specifications in paragraph c. of the bill of particulars heretofore furnished, viz., whether the defendant is charged with having driven an automobile in manner as aforesaid, because. he was then and there under the influence of intoxicating liquor, or drove at a speed greater than fifty-five (55) miles per hour during the hours when lights on the vehicles are required, or drove at a speed greater than forty-five (45) miles per hour, the maximum permissible speed, or attempted to pass another vehicle when he was unable to see a sufficient clear road to pass and return to his side of the road before endangering an approaching vehicle coming in the opposite direction, or otherwise.

"6. The conditions under which it is charged the defendant wrongfully and unlawfully drove a motor vehicle in a grossly reckless, culpable and negligent manner by driving at a rate of speed greater than was reasonable and prudent and proper at the time mentioned in the information, having regard for the conditions then and there existing on said highway, as is the specification in paragraph c. of the bill of particulars heretofore furnished, viz., whether the highway was then and there obstructed and not open to travel, or was wet and slippery, or was such in its course that the view of the defendant was obscured and limited, or otherwise.

"7. By what means the defendant is charged with killing the said Lewis Glenn Voeltz in willfully, wrongfully and un-

lawfully driving and operating an automobile at a speed greater than fifty-five (55) miles per hour during the hours when lights on the vehicles are required, as are the specifications in paragraph d. of the bill of particulars heretofore furnished, viz., whether by driving his automobile into or over the said Lewis Glenn Voeltz, or by collision with an automobile in which the said Lewis Glenn Voeltz was then riding, or by the upset of an automobile in which the said Lewis Glenn Voeltz was then riding, or otherwise.

"8. By what means the defendant is charged with killing the said Lewis Glenn Voeltz in willfully, wrongfully and unlawfully driving and operating an automobile at a speed greater than the maximum permissible speed of forty-five (45) miles per hour, as are the specifications in paragraph e. of the bill of particulars heretofore furnished, viz., whether by driving his automobile into or over the said Lewis Glenn Voeltz, or by collision with an automobile in which the said Lewis Glenn Voeltz was then riding, or by the upset of an automobile in which the said Lewis Glenn Voeltz was then riding, or otherwise.

"9. By what means the defendant is charged with killing the said Lewis Glenn Voeltz in willfully, wrongfully and unlawfully driving an automobile and attempting to pass another vehicle when he was unable to see a sufficient clear road to pass and return to his side of the road before endangering an approaching vehicle coming in the opposite direction, as are the specifications in paragraph f. of the bill of particulars heretofore furnished, viz., whether by driving his automobile into or over the said Lewis Glenn Voeltz, or by collision with an automobile in which the said Lewis Glenn Voeltz was then riding, or by the upset of an automobile in which the said Lewis Glenn Voeltz was then riding, or otherwise.

"This motion is made and based upon the information on file. herein charging the defendant with the crime of manslaughter, and as well upon his demand herewith served and filed, and further upon his motion, demand and affidavit for bill of par-

ticulars heretofore filed and served, heard and by the court granted, and also upon the order of the court thereafter made granting his motion last aforesaid, and upon one and all the other orders, papers, pleadings, minute entries and proceedings in the cause had.''

On November 14, 1949, the trial court made an order granting defendant's motion for a further and more specific bill of particulars and on November 21, 1949, the county attorney served upon defendant's counsel and filed an amended bill of particulars as follows:

''Comes now the above named plaintiff, by and through the undersigned, its attorney and County Attorney in and for the County of Yellowstone, State of Montana, and pursuant to the order of this Court, hereby makes and files an amended Bill of Particulars, alleges and sets forth the following:

''That the above named defendant, W. P. Bosch, caused the death of Lewis Glenn Voeltz in the manner and at the time alleged in the information filed herein under the following circumstances, to-wit: That an automobile then and there driven by the defendant, W. P. Bosch, and then and there occupied by the said W. P. Bosch, Pat Kroh and Lewis Glenn Voeltz, was negligently driven under the following circumstances:

'' (a) That the defendant drove and operated an automobile at the time set forth in the information, upon and over a highway and public thoroughfare of the State of Montana, in Yellowstone County, Montana, while he was then and there under the influence of intoxicating liquor, and as a result of the driving of said car under the above circumstances, the said car left the highway and upset and overturned, which act, to-wit, the driving while under the influence of intoxicating liquor, was an efficient and producing cause of the accident which resulted in the death of Lewis Glenn Voeltz.

'' (b) That defendant wrongfully and unlawfully, at the time mentioned in the information, drove a motor vehicle on a public highway in Yellowstone County, Montana, in a grossly

reckless, culpable and negligent manner in that he drove said automobile, without maintaining control thereof, and at a rate of speed so great he could not control said automobile, and likewise, greater than was reasonable and prudent and proper, having regard for the conditions then and there existing on said .highway, to-wit, driving at night on a heavily traveled highway, and that the said accident which resulted in the death of Lewis Glenn Voeltz was caused by such actions on his part, and that his actions as aforesaid, were the proximate result thereof.

''(c) That defendant wilfully, wrongfully and unlawfully, drove and operated an automobile on a public highway of the State of Montana at a speed greater than fifty-five (55) miles per hour during the hours when lights on the vehicles are required, and as a result of the driving under the above circumstances, said car left the highway and upset and overturned, which acts contributed to and were proximate causes of the death of the said Lewis Glenn Voeltz.

''(d) That defendant wilfully, wrongfully and unlawfully drove and operated an automobile on a public highway of the State of Montana, County of Yellowstone, which said highway was in a speed zone limited by law to the maximum speed of forty-five (45) miles per hour, at a speed greater than the maximum permissible speed of forty-five (45) miles per hour, and as a result of the driving under the above circumstances, said car left the highway and upset and overturned, which acts contributed to and were proximate causes of the death of the said Lewis Glenn Voeltz.

''(e) That defendant wilfully, wrongfully and unlawfully, at the time mentioned in the information, drove and operated an automobile on a public highway of the State of Montana, and while driving said automobile, attempted to pass another vehicle when he, the defendant, was unable to see a sufficient clear road to pass and return to his side of the road before endangering an approaching vehicle coming in the opposite direction, and as a result of the driving under the above condi-

tions, said car left the highway and upset and overturned, which acts contributed to and were proximate causes of the death of the said Lewis Glenn Voeltz.

"That each and all of the foregoing acts of the defendant, W. P. Bosch, contributed to or were the proximate cause of the death of the said Lewis Glenn Voeltz."

At the opening of the trial the defendant interposed general and specific objections to the introduction of evidence under the information and amended bill of particulars; the objections were overruled. At the close of the state's case and at the close of all the evidence in the case, the defendant separately moved the court to withdraw from the jury and from the case the specifications contained in paragraphs (b), (c), (d) and (e) of the amended bill of particulars, which motions were denied and defendant assigns error. The defendant also assigns error upon the court's refusing to give defendant's offered separate instructions directing the jury that paragraphs (a), (b), (c), (d) and (e) of the bill of particulars were withdrawn entirely from their consideration.

The information, when in proper form as here, is all that is required and necessary under our statutes to apprise the defendant of the crime or offense with which he is charged. The endorsement of the state's witness thereon is for the purpose of advising the defendant of the witnesses who will appear against him, so that if he desires he may interview them.

Our statutes set forth all that is required under our Code of Criminal Pleading. R. C. M. 1947, sec. 94-6401, provides: "Forms and rules of pleading. All the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code." If the defendant fails to move to set aside the information under paragraphs 1 and 3 of subdivision 5, R. C. M. 1947, sec. 94-6601, then R. C. M. 1947, sec. 94-6701, applies and provides: "Pleading on part of defendant. The *only* pleading on the part of the defendant is either a demurrer or a plea." Emphasis supplied. The grounds of the demurrer are set forth

in R. C. M. 1947, sec. 94-6703, the second ground being that the information does not substantially conform to the requirements of R. C. M. 1947, secs. 94-6403, 94-6404 and 94-6405.

The word "only" is defined as: Alone in its class; without others of the same class or kind, sole, single, exclusive, solely, this and no other. See Webster's New International Dictionary, 2d Ed. "Solely, alone; of or by itself; without anything more; exclusive; nothing else or more." Black's Law Dictionary, Deluxe Ed. Compare Ex parte Salhus, 63 N. D. 238, 247 N. W. 401, 403; People v. Fair, 43 Cal. 137, 146.

We can find no section of the Criminal Code directing or requiring a bill of particulars to be furnished to a defendant charged with a criminal offense. Our Code of Criminal Procedure follows almost word for word the Criminal Procedure Code of California.

As was said in People v. Thorn, 138 Cal. App. 714, 33 Pac. (2d) 5, 15, wherein the court reiterated the same ruling of the supreme court of California in People v. Alviso, 55 Cal. 230: "We know of no statutory authority for a bill of particulars in a criminal case, and under our system of pleading in such cases there seems to be no place for it." This has always been and is now the law in California. Some states have criminal procedural statutes providing for the furnishing by the prosecutor to defendant's attorney bills of particulars. However, Montana has never had any such statute, except the special legislation applying to liquor violations under the old liquor law, section 31, Chapter 9, Extr. Laws of 1921, being section 11078, Penal Code 1921, and referred to in State v. Griebel, 65 Mont. 390, 397, 211 Pac. 331, and in State v. Sedlacek, 74 Mont. 201, 206, 239 Pac. 1002.

This court in State v. Gondeiro, 82 Mont. 530, 268 Pac. 507, 511, in discussing the furnishing of a bill of particulars, stated: "That a bill of particulars is permissible in a proper case is recognized in State v. Sedlacek, [supra]." The reason it was recognized in liquor cases was because of the above particular permissive statute and for no other reason. Section 11078 was

repealed in 1926. This influence seems to have carried over and to have been erroneously applied in any criminal case. This court in State v. Gondeiro, supra, erroneously stated: "The granting or refusal of it [a bill of particulars] rests in the sound discretion of the court. * * * It seems to be the rule in California. People v. Superior Court, 53 Cal. App. 185, 199 Pac. 840." It is significant to note that no other court except this court has cited the California case. However, in that case, People v. Superior Court, [53 Cal. App. 185, 199 Pac. 840] the syllabus is misleading. In the body of the opinion the court said: "The question whether or not, in a criminal action, the court may require the people to furnish a bill of particulars apparently has not been passed upon in this state, except that in People v. Alviso, 55 Cal. 230, the Supreme Court stated that the furnishing of such bill of particulars is not required by any section of the Penal Code, 'and we do not call to mind any rule of law requiring the same to be done.' * * * It is not necessary to pass upon the question above stated, and we express no opinion thereon." The law in California is well established, as stated in the Alviso case. See People v. Thorn, supra. Compare: State v. Quinn, 40 Mo. App. 627; State v. Noell, 220 Mo. App. 883, 295 S. W. 529; State v. Wells, 162 S. C. 509, 161 S. E. 177, 181.

We hold that in this state, where our Criminal Code is complete, and the legislature has designated specifically each step in the criminal procedure and practice, there is no authority for a demand for, nor for an order, requiring the furnishing of a bill of particulars. There is nothing to move the discretion of a trial court. Either every defendant is entitled to a bill of particulars as a matter of law, or where there is no law authorizing the same, no defendant is entitled to it.

Judicial discretion is the liberty, privilege and power prescribed by and conferred upon the judiciary by law. Not being conferred by law, it does not exist. Therefore we hold that in a criminal case no bill of particulars may be required or ordered and hereby expressly overrule any state-

ment or holding to the contrary that may appear in State v. Gondeiro, supra; State v. Shannon, 95 Mont. 280, 26 Pac. (2d) 360; State v. Stevens, 104 Mont. 189, 65 Pac. (2d) 612; State v. Hahn, 105 Mont. 270, 72 Pac. (2d) 459; State v. Robinson, 109 Mont. 322, 96 Pac. (2d) 265, and any other such statements or holdings by this court.

Judgment and order affirmed.

MR. JUSTICE METCALF concurs.

MR. CHIEF JUSTICE ADAIR (specially concurring):

I concur in the result but not in all that is said in the above opinion. In this jurisdiction there is no statutory authority for a bill of particulars in a criminal case and under the system of pleading prescribed by our Codes there is no place for it. Particularity to the point of absurdity in pleading in a criminal case is neither required nor tolerated. State v. Gondeiro, 82 Mont. 530, 535, 268 Pac. 507. Accordingly, I expressly concur in the overruling of all former holdings of this court to the contrary and in the holding of the majority herein that, under the law of this jurisdiction, no bill of particulars may be required or ordered in any criminal case.

I am of the opinion that the law is as stated in State v. Bast, 116 Mont. 329, 151 Pac. (2d) 1009, but that such case is readily distinguishable from the instant case wherein the defendant Bosch admitted that when turning out to pass the vehicle ahead of him his automobile was then traveling at a rate of speed in excess of the maximum permitted by law. Aside from and exclusive of the testimony of the witness Hall, ample competent evidence was introduced to fully sustain the jury's verdict and the judgment entered thereon and I find no reversible error in the record submitted on this appeal.

MR. JUSTICE ANGSTMAN (dissenting in part and concurring in the result):

I do not agree that the witness Hall was sufficiently qualified as an expert to give his opinion as to the speed of the car when

the brakes were applied. He was an automobile mechanic. His work consisted of checking and repairing automobiles. He never attended school dealing with the effect of skid marks on the speed of an automobile but did attend a braking school. When asked, "Did you learn to determine the speed of moving vehicles from skid marks left by those vehicles on the highway," he answered, "My knowledge of that is strictly from the use of vehicles and the rules of the highway."

When asked his estimate of the speed of the car, he said, "It would be rather difficult to arrive at an exact figure. However, I would say this much, that in order to leave tracks like that, the car would have to go at an excessive rate of speed, or in my opinion, over 60 miles an hour."

I think the witness Hall was no better qualified to judge the speed of the car than the members of the jury. He admitted that he was indulging in guesswork and I think as to him the rule applied in State v. Bast, 116 Mont. 329, 151 Pac. (2d) 1009, has application. And see Nelson v. Hedin, 184 Iowa 657, 169 N. W. 37; Everart v. Fischer, 75 Or. 316, 145 Pac. 33, 147 Pac. 189; Wisniewski v. Weinstock, 130 N. J. L. 58, 31 A. (2d) 401; Bunton v. Hull, 51 N. M. 5, 177 Pac. (2d) 168, and Reall v. Deiriggi, 127 W. Va. 662, 34 S. E. (2d) 253.

I believe, however, that defendant was not prejudiced by Hall's testimony. The witness Benson, I think, was qualified to give an opinion and he had the car moving 72 miles per hour, and defendant admitted that he was going between 50 and 55 miles per hour in attempting to pass a vehicle and that was in excess of the legal limit at the time and place of the accident. Since Hall admitted he was guessing about speed, I cannot believe that the jury gave much, if any, weight to his testimony.

As to the balance of the opinion I concur in the result but not with all that is said in it. Defendant moved the court to withdraw from the jury's consideration those paragraphs of the amended bill of particulars having to do with the speed of the car. It is defendant's contention that there was no com-

petent evidence of the speed at which the car was moving and hence that all those charges set forth in the amended bill of particulars should have been withdrawn. Since there was competent evidence of speed, I think the court properly denied the motion. I see no reasonable excuse for copying so much of the transcript into the opinion. Nor is it necessary to overrule the long line of opinions of this court sanctioning the use of bills of particulars in criminal cases, but if that is done the new procedure should apply only to future cases and should not control this one.

MR. JUSTICE FREEBOURN (dissenting):

I believe defendant is entitled to a new trial for two reasons.

The first is in permitting, over objection, of a so-called bill of particulars to go to the jury. The bill of particulars was not evidence. It constituted a statement of what the prosecution believed the facts to be and what its proof would be. It was a highly prejudicial statement covering three pages of transcript and must have had a telling effect upon the jury.

The second reason is that neither Hall, an automobile mechanic, nor state patrolman Benson was qualified to state to the jury the speed at which the defendant's car was traveling at the time of the accident.

Hall was in his bedroom, some seventy-five yards from the scene of the accident, when he heard a "terrific squeal of brakes that sounded like a car sliding." He was allowed to testify the car was traveling over 60 miles an hour. Benson was allowed to say the car was traveling 72 miles an hour. The accident occurred in darkness and neither witness observed the car traveling before the accident. Their conclusions were pure guesswork and conjecture.

No showing was made as to the condition of the tires or brakes.

What was said by this court in State v. Bast, 116 Mont. 329, 151 Pac. (2d) 1009, 1013, well applies here. There we said: "As before stated, Patrolman Blake did not witness the happening

of the accident for at the time it occurred he was at his home in Kalispell some 10 or more miles distant and he certainly did not qualify to testify with any degree of accuracy as to the miles per hour the car was traveling some forty or fifty minutes before he came into the picture. Such guesswork, speculation and conjecture cannot be said to rise to the dignity of evidence on which to sustain a conviction of the serious crime here charged.''